# EXHIBIT A



1  Kelly T. Smith 196821
   THE SMITH FIRM
2  5453 Parish Court
   Sacramento, CA 95822
3  T: (916) 930-1961
   M: (916) 607-1998
4  manager@thesmithfirm.com

5  Attorney for Petitioners
   SPRAWLDEF et al
6

7

8                   SUPERIOR COURT OF CALIFORNIA
9                      COUNTY OF CONTRA COSTA

10

11 | SPRAWLDEF, a public benefit corporation, | Case no. **N18-1001**
12 | CITIZENS FOR EAST SHORE PARKS, a public benefit corporation, JAMES HANSON, | PETITION FOR WRIT OF MANDATE
13 | TONY SUSTAK, PAUL CARMAN and PAMELA STELLO, individuals, | [Brown Act, Gov. Code §54960.1; Code of Civil Procedure §§ 1085]
14 |
15 | Petitioners,
16 | vs.
17 | CITY OF RICHMOND, a California municipality, MAYOR TOM BUTT and RICHMOND CITY COUNCIL, in their official capacities, and Does 1 to 10, inclusive, | **BY FAX**
18 |
19 |
20 | Respondents.
21

22                      **I. INTRODUCTION**

23     1.   Richmond's Mayor and City Council, in unannounced serial meeting and in closed session,
24 violated California's open meeting "Brown Act," Government Code §§ 54950 *et seq.*, when they
25 approved specific land development, purported to settle litigation over development of Point Molate, the
26 former Navy Fuel Yard transferred to the City of Richmond's jurisdiction in 2008.
27     2.   Petitioners, citizen groups and individuals, seek to invalidate the City's closed-door action and
28 to assure compliance with the Brown Act's open meeting requirements for Point Molate land use.

## II. PARTIES

3. Petitioner Sustainability Parks Recycling and Wildlife Legal Defense Fund (SPRAWLDEF) is a California public benefit corporation dedicated to parks and preservation. Its directors, all East Bay residents, regularly utilize the San Francisco Bay region for recreation. SPRAWLDEF regularly relies on the open transparent processes of the Brown Act and other similar open meeting laws and policies in attaining its environmental goals. SPRAWLDEF legal action has promoted sustainable waste management and recycling, enhanced Bay Area public park use and preserved wildlife habitat in Northern California.

4. Petitioner Citizens for East Shore Parks (CESP) is a California public benefit corporation dedicated to the promotion of park land and public open spaces around the Bay Area, and to enhancing shoreline access and habitat preservation. CESP regularly relies on the open transparent processes of the Brown Act and other similar open meeting laws and policies in attaining its environmental goals. CESP and SPRAWLDEF brought suit against Upstream Point Molate and the City of Richmond in 2004 challenging environmental review and multiple improprieties in the approval of the casino development agreement between the City of Richmond and Upstream Point Molate and the Guidiville band of Indians. The suit resulted in a 2010 settlement putting environmental conditions and significant other community benefits, since abandoned, on the project.

5. Petitioner JAMES HANSON is a Richmond resident long interested in open, transparent policies for Point Molate open space and environmental land use by the City of Richmond. He was a member of the Point Molate Community Advisory Committee and its immediate past chairperson.

6. Petitioner TONY SUSTAK is a Richmond resident long interested in open, transparent policies for Point Molate open space and environmental land use by the City of Richmond.

7. Petitioner PAUL CARMAN is a Richmond resident long interested in open, transparent policies for Point Molate open space and environmental land use by the City of Richmond. He was a member and previous chairperson of the Point Molate Community Advisory Committee.

8. Petitioner PAMELA STELLO is a Richmond resident long interested in open, transparent policies for Point Molate open space and environmental land use by the City of Richmond. She was a member of the Point Molate Community Advisory Committee.

9. Respondent CITY OF RICHMOND is a California municipality.

10. Respondent MAYOR TOM BUTT is and was at all time relevant the Mayor of respondent City of Richmond.

11. Respondent CITY COUNCIL is and was at all times relevant here the City Council of Richmond.

12. The challenged actions will cause great and irreparable injury to petitioners. Petitioners have no other plain, speedy or adequate remedy in the ordinary course of law for the injuries caused to it by Respondents' improper and illegal adoption of the challenged actions.

### III. JURISDICTION AND VENUE

13. This court has jurisdiction under California Code of Civil Procedure (CCP) §§ 1085 and California Government Code §54960.1. Respondents City of Richmond, Mayor Tom Butt and the City Council are located in Contra Costa County. The subject land, Point Molate, is located in Contra Costa County and the actions of the respondents challenged here took place in Contra Costa County.

14. Petitioners have exhausted their administrative remedies and have made demand that Respondents cure or correct the challenged actions and have commenced this case within 15 days of petitioners' receipt of respondents' notice of their response to that demand.

### IV. ALLEGATIONS

15. Petitioners make the following allegations based upon information and belief. The paragraphs below will refer to information in numerous documents relating to this lawsuit, all of which will be duly filed with this court as part of the record of proceedings, here incorporated by reference.

**1. Point Molate's transfer to the City of Richmond.**

16. Point Molate, on the shore of the City of Richmond, is a decommissioned United States Naval Base.

17. When the base was being decommissioned, the City sought to acquire the property from the Navy. However, transfer from the Navy to the City required that the property be used for self-sustaining regional economic development.

3

PETITION: BROWN ACT VIOLATION

18. As a result of this status, the City faced numerous obstacles in developing the Point Molate Property, including its location next to an oil refinery, a historic district on the National Register of Historic Properties, large unfunded infrastructure and cleanup challenges, buildings unfit for habitation due to structural and code deficiencies and the presence of lead and asbestos, proximity of the site to the San Francisco Bay shoreline with attendant permitting challenges and its recreational and wildlife habitat considerations, and the need to obtain ownership of the Property from the Navy.

19. The City issued a Request for Qualifications inviting private development proposals for potential development.

20. In 2003, the City selected developer Upstream Point Molate (Upstream) to develop the property as a casino to be sold to the landless Guidiville band of Indians. Those parties entered into a Land Disposition Agreement (LDA) to pursue the development.

21. Upstream began thereafter to obtain the government approvals necessary to develop the Point Molate casino, including approval from the various federal agencies such as the Navy.

22. In 2004, petitioners SPRAWLDEF and CESP filed an action challenging the City's transactions, including the Land Disposition Agreement, due to the failure of the City and Upstream to comply with the requirements of the California Environmental Quality Act (CEQA).

23. Settlement of that action was reached in October 2010, with the addition of extensive environmental protections, community benefits and economic improvements by the developer. However, by that time, the City focused on other obstacles to the development, including the approval by the United States Department of the Interior's Bureau of Indian Affairs (BIA).

24. Ultimately, Upstream failed to obtain necessary federal approvals and the City withdrew its support of the casino project.

25. Thereafter, on March 16, 2012, Upstream Point Molate filed suit in the Northern District federal court, seeking declaratory relief against BIA and federal government defendants under multiple causes of action, and against the City of Richmond for breach of contract. Upstream alleged the City failed good faith duties to promote the project to the federal agencies. Upstream also alleged that the City failed to approve the project environmental impact statement/report prepared for compliance with the California Environmental Quality Act and the National Environmental Policy Act. *Guidiville*

*Rancheria of California et al v. United States of America et al*, federal Northern District of California case no. 4:12-cv-01326.

26. The federal district court granted defendants' motion to dismiss on the pleadings. *Guidiville Rancheria of California v. United States* (N.D. Cal. 2013) 5 F.Supp.3d 1142, 1149.

27. Upstream appealed. In 2017, the Ninth Circuit remanded for leave to amend the breach of contract and good faith and fair dealing. The appeal court affirmed dismissal of the CEQA cause of action. *Guidiville Rancheria of California v. United States* (9th Cir. 2017) 704 Fed.Appx. 655.

28. As Upstream's litigation proceeded, the City of Richmond and its citizens studied the Point Molate site and anticipated doing an actual planning for the site, including full public participation, seeking a plan that would not involve a casino-dominated project. However, the City took the position that while the litigation proceeded no real planning should be conducted as it might interfere with the litigation. A Point Molate Community Advisory Committee was appointed to study the history, the challenges and the opportunities of the site in hopes that the information it gathered would be useful once the planning process was actually commenced. That planning process, with the long awaited public input, has never been done.

29. Instead, the City with the concurrence of the developer, negated the open planning process by adopting, in closed session, a pre-determined plan as part of a closed-door settlement of the Upstream lawsuit, attempting to bypass the required zoning and planning and public participation required under law.

**2. The closed session settlement approval.**

30. At its April 17, 2018 meeting, the Mayor and City Council announced that the City had entered into judgment in the *Guidiville* case. The announcement came after a series of unannounced court-mediated settlement conferences under the *Guidiville* litigation, several closed-door discussions of the settlement during that litigation, and unannounced serial communications and consultations by Mayor Tom Butt with members of the City Council.

31. The public was completely left in the dark regarding the judgment process and its terms, the land use project approved in the judgment, the development concessions to Upstream, and the "Discretionary City Approvals" granted Upstream.

32. Blindsided and enraged, Richmond citizens who had spent years believing that their Point Molate input was being considered lambasted the Mayor and Council at the April 17, 2018 meeting where the settlement and judgment were finally, after the fact, publicly announced.

33. Among the judgment's "Discretionary City Approvals," the City must allow 670 housing units at Point Molate. The judgment implies that the 670-unit dictate is consistent with City of Richmond land use because it conforms to the 1997 Point Molate Reuse Plan, "which included residential use as one of three alternatives." Judgment, paragraph 6.

34. A 2016 zoning ordinance recognized Point Molate as being "where the City Council has initiated a review of appropriate zoning, development standards and related open space for General Plan implementation in the context of the Point Molate Reuse Plan," designated it a "study area" and required final zoning before any development approval.

35. The judgment is not consistent with City land use, either its zoning or general plan. The judgment would allow units in Point Molate with no reference or consideration of density or any other impact. Nor does the Reuse Plan resolve questions of density and location of housing.

36. Yet the judgment constitutes a pre-approval of 670 housing units and serves as a development agreement with Upstream to provide that housing, without, however, meeting the procedural requirements for a development agreement.

37. On April 30, 2018, petitioners through their counsel served on the City a letter demanding that the City cure and correct its violations of the Brown Act.

38. The City, through its City Attorney, responded by mail May 4, 2018, that "the City's actions did not violate the Brown Act and, therefore, there is nothing for the City to cure or correct."

39. This action follows.

### FIRST CAUSE OF ACTION

<u>Violation of the Brown Act</u>

40. Petitioners incorporate all other allegations as if fully set forth, and for a first cause of action, allege as follows:

41. California's open meeting law, the Brown Act, Government Code §54950 et seq, requires that deliberations leading up to settlement be open to the public. The "Brown Act open meeting requirements encompass not only actions taken, but also fact-finding meetings and deliberations leading up to those actions." *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471, 502.

42. The Brown Act provides for confidential, closed meetings with the City's attorneys to discuss litigation. Gov. Code §54956.9 (the "litigation exemption"). But that exemption does not extend to closed negotiations with outsiders such as the opposing party, their attorneys and third-party mediators.

43. Furthermore, the "litigation exemption" from open meeting does not allow for approval of settlements in closed session where closed negotiations are "used as a subterfuge to reach nonlitigation oriented policy decisions." *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 186.

44. In its settlement of Point Molate's development, including providing Upstream Point Molate with what is effectively a development agreement and more, including a guarantee of a minimum amount of residential development, the City, its Mayor and Council have reached land use decisions which require open meeting discretionary approvals under California law, including open meetings required under Gov. Code §§ 65852, 65867.5, 65090, 65091, 65355, 65854 and 65860.

45. The City's May 4, 2018 response to petitioners' cure and correct letter acknowledges the entitlements granted to Upstream Point Molate, stating "The Judgment expressly contemplates a robust public process over the next two years for the entitlements and explicitly requires CEQA compliance."

46. Petitioner also is informed and believes, and thereon alleges, that the Mayor and members of the City Council used direct communications and personal intermediaries, including principals, agents or representatives of Upstream Point Molate, to develop a collective concurrence as to action to be taken on the challenged actions, including communications between the Mayor and members of the City Council, and between members of the Council to other members.

47. As a result of such use by the Mayor and members of the City Council, using direct communications and personal intermediaries, the members of the respondent legislative body reached a collective concurrence as to action to be taken on the challenged decisions, including agreement on the significant terms of the decision which became the judgment in the *Guidiville* action.

48. The City therefore is in violation of Gov. Code §§ 54953, 54954.2, 54956.9, and 54962. Its closed-door settlement, and its approval of the resulting judgment, should be rendered and declared null and void.

49. Petitioner is entitled to a writ of mandate commanding Respondents to vacate and rescind the challenged actions.

## PRAYER

WHEREFORE, Petitioners pray:

1. That the Court issue a Peremptory Writ of Mandamus to set aside and void any approvals, entitlements, findings or resolutions related to the City's action approving the closed-door settlement of the Guidiville litigation and to order compliance with the Brown Act prior to further consideration of any related approvals;

2. For this court to issue a temporary restraining order, a preliminary injunction, and a permanent injunction precluding Respondents from approving land use, development agreement, land disposition agreement, sales or other transactions of land at Point Molate unless done in compliance with the Brown Act.

3. For this court to issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring Respondents to tape record their closed sessions concerning any Point Molate-related litigation, settlement or decision as provided in Gov. Code §54960;

4. For costs of the suit and attorney's fees, pursuant to Gov. Code, § 54960.5 and;

5. For other and further relief as the court finds proper.

DATE: May 20, 2018

_____
KELLY T. SMITH
Attorney for Petitioners
SPRAWLDEF, CESP, HANSON, SUSTAK, CARMAN and STELLO

## VERIFICATION

I am the attorney for the petitioner in the above entitled action. Petitioner is unable to verify the above petition because they are absent from Sacramento County in which I have my office and therefore unable to verify the Petition.

Pursuant to California Code of Civil Procedure §446, I have read the foregoing Petition and am familiar with its contents. I am informed and believe that the matters contained within it are true and, on that ground, allege that the matters stated are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. I make this declaration and verification in Sacramento, Sacramento County, California.

DATE: May 20, 2018

_____
KELLY T. SMITH
Attorney for Petitioners
SPRAWLDEF, CESP, HANSON, SUSTAK, CARMAN and STELLO