1   BRUCE REED GOODMILLER (CA SBN 121491)
    City Attorney
2   Email:  bruce_goodmiller@ci.richmond.ca.us
    RACHEL SOMMOVILLA (CA SBN 231529)
3   Assistant City Attorney
    Email:  rachel_sommovilla@ci.richmond.ca.us
4   CITY OF RICHMOND
    450 Civic Center Plaza
5   Richmond, California  94804
    Telephone:  510.620.6509
6   Facsimile:  510.620.6518

7   ARTURO J. GONZÁLEZ (CA SBN 121490)
    Email:  AGonzalez@mofo.com
8   ALEXIS A. AMEZCUA (CA SBN 247507)
    Email:  AAmezcua@mofo.com
9   ALEJANDRO L. BRAS (CA SBN 280558)
    Email:  ABras@mofo.com
10  MORRISON & FOERSTER LLP
    425 Market Street
11  San Francisco, California  94105-2482
    Telephone:  415.268.7000
12  Facsimile:  415.268.7522

13  Attorneys for Respondent
    THE CITY OF RICHMOND, MAYOR TOM
14  BUTT, and RICHMOND CITY COUNCIL

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17

18  SPRAWLDEF, a public benefit corporation,      Case No.:  18-cv-03918-YGR
19  CITIZENS FOR EAST SHORE PARKS, a
    public benefit corporation, JAMES            **RESPONDENTS' MEMORANDUM OF**
20  HANSON, TONY SUSTAK, PAUL                    **POINTS AND AUTHORITIES IN**
    CARMAN and PAMELA STELLO,                    **SUPPORT OF MOTION TO DISMISS**
21  individuals,                                 **PETITIONERS' PETITION FOR WRIT**
                                                 **OF MANDATE**
22                        Petitioners,
                                                 Date:      September 11, 2018
23           v.                                  Time:      2:00 p.m.
                                                 Place:     Ronald V. Dellums Federal Building,
24  CITY OF RICHMOND, a California                          1301Clay Street, Oakland, CA
    municipality, MAYOR TOM BUTT and
25  RICHMOND CITY COUNCIL, in their              Judge:  Hon. Yvonne Gonzalez Rogers
    official capacities, and Does 1 to 10,
26  inclusive,

27                        Respondents.

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ............................................ 2

III.  STATEMENT OF FACTS ............................................................................. 3

IV.   LEGAL STANDARD ..................................................................................... 4

V.    ARGUMENT ................................................................................................... 5

    A.    Petitioners May Not Invalidate the Court's Final Judgment.................. 6

    B.    There Is No Case or Controversy for the Court to Adjudicate ............. 8

    C.    No Facts Alleged Entitle Petitioners to Relief .................................... 10

        1.    The Judgment Directly Contradicts Petitioners' Claims......................... 11

        2.    Petitioners' Conclusory Allegations Are Not Sufficient to Sustain a Cause of Action ........................................................................................ 13

        3.    The Brown Act Expressly Provides for the Authority to Discuss and Settle Legal Disputes in Closed Session .................................................. 14

        4.    The Brown Act Prohibits Overturning Actions That Create Contractual Obligations ........................................................................... 16

VI.   CONCLUSION .............................................................................................. 16

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ...............................................................................................9

*Allen v. McCurry*,
  449 U.S. 90 (1980) .................................................................................................7

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ...............................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................4, 5, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................4, 5

*In re Bidz.com, Inc. Deriv. Litig.*,
  773 F. Supp. 2d 844 (C.D. Cal. 2011) ..................................................................5

*Boyle v. City of Redondo Beach*,
  70 Cal. App. 4th 1109 (1999) ..............................................................................10

*Brehmer v. Planning Bd. of Town of Wellfleet*,
  238 F.3d 117 (1st Cir. 2001) .................................................................................8

*Catlin v. United States*,
  324 U.S. 229 (1945) ...............................................................................................6

*Cetacean Cmty. v. Bush*,
  386 F.3d 1169 (9th Cir. 2004) ...............................................................................8

*Cohan v. City of Thousand Oaks*,
  30 Cal. App. 4th 547 (1994).........................................................................11, 14

*Devia v. Nuclear Regulatory Comm'n*,
  492 F.3d 421 (D.C. Cir. 2007) ..............................................................................9

*Galbiso v. Orosi Pub. Util. Dist.*,
  182 Cal. App. 4th 652 (2010)...............................................................................10

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005)................................................................................5

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993) ...............................................................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................8

*Marino v. Countrywide Fin. Corp.*,
   26 F. Supp. 3d 955 (C.D. Cal. 2014) ......................................................8

*North Pacifica LLC v. Cal. Coastal Comm'n*,
   166 Cal. App. 4th 1416 (2008)...............................................................10

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) .......................5

*Pierce v. Cantil-Sakauye*,
   No. C 13-01295 JSW, 2013 U.S. Dist. LEXIS 114406 (N.D. Cal. Aug. 13,
   2013) ........................................................................................................5

*Riley v. Kennedy*,
   553 U.S. 406 (2008) .................................................................................6

*San Diegans for Open Government v. City of Oceanside*,
   4 Cal. App. 5th 637 (2016)......................................................................15

*San Lorenzo Valley Cmty. Advocates for Responsible Educ. v. San Lorenzo Valley
   Unified Sch. Dist.*,
   139 Cal. App. 4th 1356 (2006).........................................................10, 14

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,
   733 F.3d 1251 (9th Cir. 2013)..............................................................5, 13

*Southern Cal. Edison Co. v. Peevey*,
   31 Cal.4th 781,798–99 (2003) ...............................................................14

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)....................................................................5

*Thrifty Shoppers Scrip Co v. U. S*
   389 U.S. 580 (1968) .................................................................................7

*Trancas Property Owners Association v. City of Malibu*,
   138 Cal. App. 4th 172 (2006)..................................................................15

*Travers v. City of Morro Bay*,
   No. 2:08-cv-06822-FMC-MANx, 2008 WL 11338126 (C.D. Cal. Dec. 2,
   2008) ...............................................................................................7, 8, 14

*U. S. v. Blue Chip Stamp Co.*,
   272 F. Supp. 432 (C.D. Cal. 1967) ...........................................................7

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

iii

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................9

**Statutes**

Cal. Gov't Code §§ 54950-63 ...............................................................................14

Cal. Gov't Code § 54956.9 ...........................................................................1, 2, 11

Cal. Gov't Code § 54956.9(a) ................................................................................14

Cal. Gov't Code § 54957.1 (a)(3) ..........................................................................15

Cal. Gov't Code § 54960.1 .............................................................................10, 11

Cal. Gov't Code § 54960.1(a) ................................................................................11

Cal. Gov't Code § 54960.1(d)(1) ...........................................................................16

Cal. Gov't Code § 54960.1(d)(3) ...........................................................................16

**Other Authorities**

75 Ops. Cal. Atty. Gen. 14 (1992) .........................................................................14

Fed. R. Civ. P. 8(a)(2) .............................................................................................4

Fed. R. Civ. P. 12(b)(6) ...........................................................................................4

U.S. Const. art. III, § 2 .............................................................................................8

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This case is a political dispute that does not belong in the courts. Four Richmond residents are displeased with this Court's Judgment resolving the lengthy and contentious litigation related to Point Molate. But their difference in opinion does not warrant the Judgment's dismantling. Rather, Petitioners should express their opinions through the City of Richmond's administrative and legislative process that will consider any future development of Point Molate.

The Court's April 12, 2018 Judgment is the product of six years of litigation and nearly a decade of disputes over Point Molate. Following extensive motion practice and discovery, as well as a dismissal on the pleadings and remand by the Ninth Circuit, the Court ordered the parties to consider settlement. Chief Magistrate Judge Spero guided the parties through that process. The Court's and parties' efforts to resolve the near-decade dispute must not be undermined by a handful of individuals' personal opinions about the litigation's outcome.

Petitioners veil their political differences about what would be the best use of Point Molate by alleging nonspecific violations of California's Brown Act. They point to no authority – nor could they – for the broad proposition that settlement conferences or confidential settlement communications must be publicly held or announced in order to comply with the Brown Act. If that were the law, settlements for public agencies would be nearly impossible and the courts would be overrun with Brown Act litigation. No municipality could ever engage in confidential settlement discussions and courts ordering settlement conferences or mediation would themselves run afoul of the law.

For these reasons, the Brown Act contains an explicit litigation exemption that allows closed sessions for conferences regarding pending litigation. Cal. Gov't Code § 54956.9. Petitioners concede this. (Case No. 12-cv-1326-YGR Docket ("Guidiville Dkt.") 372 at 3-4 ["[T]he Council was allowed to exclude the public from [closed session meetings to discuss the mediation and settlement] and keep confidential the contents of the discussions that occurred therein. . . . [T]he Brown Act allows a legislative body to keep confidential and not disclose to the

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

1

public a proposed settlement of litigation until that settlement has received final court approval[.]"].)

Petitioners' sole legal argument is that the litigation exemption does not apply to settlements that would "bind[] the public entity to granting a final vested right" or legislative action. (*Id.*; Dkt. 1-1 ("Petition")[1] ¶ 43.)  Petitioners' argument is unfounded and their writ of mandate must be denied for three reasons:  (1) *res judicata* applies as this federal court has entered final Judgment in this case; (2) Petitioners fail to plead any communication or action in violation of the Brown Act – there has been none; and (3) Petitioners fail to plead a single "entitlement, finding, or resolution" by the City as a result of the Judgment – again, there have been none – therefore there is no case or controversy for the Court to adjudicate.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.  Petitioners seek to invalidate a federal court judgment through a single Brown Act cause of action.  May Petitioners overturn this Court's final judgment by manufacturing a Brown Act claim?

2.  It is a fundamental requirement of any lawsuit, including a petition for writ of mandate, that the complaint present a case or controversy and one that is ripe for adjudication.  It is indisputable that there have been no entitlements or approvals under the Judgment, and Petitioners have not alleged any such entitlements or approvals.  Given that there have been no entitlements or approvals regarding Point Molate, does the petition for writ of mandate present a case or controversy that is ripe for adjudication?

3.  To state a claim under the Brown Act, Petitioners must allege more than conclusory allegations, legal characterizations, unreasonable inferences, or unwarranted fact deductions.  Petitioners must allege a legislative body's violation of a specific provision of the Brown Act, an action taken by the legislative body in

---

[1] Docket entries in *The Guidiville Rancheria of California v. The United States of America* action, Case No. CV-12-1326-YGR, are cited as "Guidiville Dkt." and docket entries in the current action, *SPRAWLDEF, et al. v. City of Richmond, et al.*, are cited as "Dkt."

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

2

1    connection with the alleged violation, a timely demand of the legislative body to

2    cure or correct the action, and prejudice.  Do Petitioners' vague and conclusory

3    allegations adequately state a claim for relief under the Brown Act?  Even if true,

4    as communications in the context of a mandatory settlement conference and

5    negotiations therefrom, do the alleged improper acts fall under the Brown Act's

6    litigation exemption?

7    **III.    STATEMENT OF FACTS**

8    Point Molate consists of approximately 400 acres of upland and tidal property transferred

9    from the United States Navy to the City of Richmond in 2003 and 2009.  (Guidiville Dkt. 361

10   ("Judgment") ¶ 4.)  In 2004, the City, Upstream Point Molate LLC (Upstream) and Guidiville

11   Rancheria of California (Tribe) entered into a Land Disposition Agreement (LDA) related to

12   Point Molate.  (*Id*. at 1.)  The outcome of the LDA became the subject of years of protracted

13   disputes—over a decade—and six years of litigation.  (*Id*.)  Upstream and the Tribe filed a

14   lawsuit in this Court in 2012 alleging breach of contract, among other causes of action.

15   (Guidiville Dkt. 1.)  The Court dismissed the case on the pleadings, and it was remanded in part

16   by the Ninth Circuit in 2017.  (Guidivlle Dkt. 296 at 3.)  Thereafter, discovery began in earnest.

17   Depositions occurred, with several more noticed and their scheduling under discussion.

18   (Declaration of Alexis Amezcua ("Amezcua Decl.") ¶ 2.)  The parties exchanged hundreds of

19   thousands of pages of documents.  (*Id*.)

20   With dispositive motions on the horizon, the Court ordered the parties to a mandatory

21   settlement conference with Chief Magistrate Judge Spero.  (Guidiville Dkt. 321.)  On February 6,

22   2018, Judge Spero supervised a full day of arms-length negotiation.  (Amezcua Decl. ¶ 3.)  On

23   April 6, 2018, the parties submitted to Judge González Rogers a proposed judgment,

24   memorializing settlement of the claims between the Tribe, Upstream, and the City of Richmond.

25   (*Id*.)  The settlement was not final at that stage, since entry of the judgment as it was submitted to

26   the Court was a material term of the settlement.  (*Id*.)  On April 12, 2018, the Court approved of

27   the Judgment without any changes.  (Guidiville Dkt. 361.)  That same day, the Judgment was

28

1  publicly announced, made available on the City's website, and placed on the agenda for the next

2  available City Council meeting on April 17, 2018.  (Amezcua Decl. ¶ 4.)

3      On April 17, the City Attorney, City Manager, and City Planner, along with outside

4  counsel, presented the Judgment terms to the City of Richmond, and answered questions from

5  Councilmembers and the public.  (Amezcua Decl. ¶ 5.)  The presentation to Councilmembers and

6  the public included discussion of the various opportunities for public input, as contemplated by

7  the Judgment, including selection of a master developer and establishment of community

8  workshops.  (Judgment ¶ 17.)  Three of the four petitioners each spoke at the City Council

9  meeting to express their disapproval of the Judgment.  (Amezcua Decl. ¶ 5.)

10     Since that time, the City has issued a schedule for community meetings and tours of Point

11 Molate, through which the public is encouraged to learn more about the site and offer their input

12 as to its potential use.  (*Id*. ¶ 6)  The first City-sponsored tour of Point Molate occurred on June

13 23, 2018.  (*Id*.)  A website in English and Spanish has been established to seek community input

14 on how to use the land at Point Molate.  (*Id*.)  Community meetings and site tours are scheduled

15 for July 23 and 25, and August 18 and 27.  (*Id*.)  A land use vision for Point Molate will be

16 presented in these open and public meetings for potential recommendation by the Planning

17 Commission and adoption by the City Council.  (*Id*.)

18     As this Court has expressly found and ordered, the Judgment is not an approval of a

19 development at Point Molate.  (Judgment ¶ 37.)  No entitlements or approvals have been taken

20 under consideration or granted for Point Molate at this time.  (*Id*.; Amezcua Decl. ¶ 7.)

21 **IV.   LEGAL STANDARD**

22     A motion to dismiss should be granted where a party fails to state a claim upon which

23 relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A pleading, including a petition for writ of

24 mandate, must set forth "a short and plain statement of the claim showing that the pleader is

25 entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26     Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more

27 than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A petition must make "a

28 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v.*

1  *Twombly*, 550 U.S. 544, 555 n.3 (2007).  Such a showing "demands more than an unadorned, the-

2  defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

3  at 555).  If a plaintiff has not pled "enough facts to state a claim to relief that is plausible on its

4  face" and thereby "nudged [his] claims . . . across the line from conceivable to plausible," the

5  complaint "must be dismissed."  *Twombly*, 550 U.S. at 570.

6          Pleadings containing "no more than conclusions[] are not entitled to the assumption of

7  truth."  *Iqbal*, 556 U.S. at 679.  Only when there are "well-pleaded factual allegations" should a

8  court "assume their veracity and then determine whether they plausibly give rise to an entitlement

9  to relief."  *Id*.  The "sheer possibility that a defendant has acted unlawfully" is not enough.  *Id*. at

10  678 (citing *Twombly*, 550 U.S. at 556).  "[A] complaint 'that offers 'labels and conclusions' or a

11  'formulaic recitation of the elements of a cause of action will not do.'"  *In re Bidz.com, Inc.*

12  *Deriv. Litig.*, 773 F. Supp. 2d 844, 850 (C.D. Cal. 2011) (quoting *Iqbal*, 556 U.S. at 678).  The

13  Court need not accept as true conclusory allegations, legal characterizations, unreasonable

14  inferences, or unwarranted fact deductions.  *See In re Bidz.com*, 773 F. Supp. 2d at 850 (citing

15  *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164

16  (1993)); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008), *aff'd*, 322 F.

17  App'x 489 (9th Cir. 2009) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

18  2001)).

19          The Court may consider documents to which Petitioners refer and rely on in a pleading in

20  ruling on a motion to dismiss, as well as documents that are integral to Petitioners' claims and

21  allegations.  *Pierce v. Cantil-Sakauye*, No. C 13-01295 JSW, 2013 U.S. Dist. LEXIS 114406, at

22  *6 (N.D. Cal. Aug. 13, 2013); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  The Court

23  should disregard allegations that contradict documents incorporated by reference or judicially

24  noticed facts.  *See, e.g.*, *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d

25  1251, 1254 (9th Cir. 2013).

26  **V.     ARGUMENT**

27          The petition should be dismissed with prejudice for three independent reasons.

28

First, petitioners' attempt to challenge the Court's final Judgment is barred by principles of *res judicata* which bar re-opening the decade-long dispute that has been adjudicated by the Judgment.

Second, Petitioners have no standing as there is no existing case or controversy; nor is there a claim ripe for adjudication.  Petitioners have the burden of proving standing and ripeness.  They have failed to do so, and there is no way to amend the petition to sufficiently allege standing or ripeness as there have been no entitlements or approvals regarding Point Molate to date.

Finally, Petitioners have failed to allege facts sufficient to state a claim for relief under the Brown Act.  Under the Brown Act, petitioners must allege a legislative body's violation of one or more of the Brown Act statutes, an action taken by the legislative body in connection with the alleged violation, a timely demand of the legislative body to cure or correct the action, and prejudice.  In this matter, petitioners have failed to allege facts sufficient under every one of these elements: there has been no violation as the Brown Act expressly exempts settlement of litigation from public hearing requirements, there has as of yet been no entitlement or approval related to Point Molate that would constitute an action by the City, and Petitioners have alleged no prejudice, nor could they.

### A.    Petitioners May Not Invalidate the Court's Final Judgment

While they have couched their requests for relief in terms of voiding entitlements and precluding approvals, in reality petitioners seek to overturn this Court's Judgment.  Petitioners admit as much in their papers filed in this Court.  (Guidiville Dkt. 372, Administrative Motion for Leave to File a Motion to Intervene ("Admin. Motion") at 5 ["If the California court finds that the Brown Act was violated, Moving Parties will seek to vacate the Court's judgment."].)

This Court's final Judgment cannot be overturned based on the political disagreement of a few citizens.  A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Riley v. Kennedy*, 553 U.S. 406, 419 (2008) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945).)  By entering a final judgment, a federal court disposes of a cause in its entirety.  *See Catlin*, 324 U.S. at 243.  By precluding parties from seeking further and repeated adjudication of matters that have been already been resolved, courts preserve the

sanctity of judgments, protect litigants from unwarranted re-litigation, and preserve judicial

resources.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).   Petitioners' attempt in this case to reopen

the Judgment and insert themselves, again,[2] into the long dispute over Point Molate is precisely

the sort of action that should be foreclosed.[3]

Petitioners do not cite any case invalidating a judgment approving of a settlement with a

municipality.  The single case the City has found that addresses a similar factual scenario *upheld*

the court's judgment and denied petitioners' requests to set aside and vacate approvals associated

with the project at issue.

In *Travers v. City of Morro Bay*, a group of citizens sought to prohibit the City of Morro

Bay from issuing development permits to a company as required by a Court-approved settlement

agreement.  *Travers v. City of Morro Bay*, No. 2:08-cv-06822-FMC-MANx, 2008 WL 11338126

(C.D. Cal. Dec. 2, 2008).  The citizens sought declaratory, injunctive, and mandamus relief to,

among other things, set aside Morro Bay's actions in approving certain permits that were alleged

to be in violation of the Brown Act.  *Travers*, at *2.  Morro Bay filed a motion to dismiss for

failure to state a claim.  The court granted the motion and dismissed the claims with prejudice,

explaining that the remedies sought in the citizens' petition would require the vacature of the

court's order in approving the settlement, and Morro Bay had no authority to vacate such an

order:

> "The remedies Plaintiffs seek for the various violations alleged in
> the [petition] would require the vacature or setting aside of the
> Court's valid June 30, 2008 Order in the *Sprint PCS Assets* suit.

---

[2] Petitioners Citizens for East Shore Parks (CESP) filed an action seeking to invalidate the land disposition agreement between the City and Upstream in 2004.  (*Citizens for the Eastshore State Park v. City of Richmond, et al.*, Contra Costa Super. Ct. Case No. N04-1657, First Amended Verified Petition for Writ of Mandate (Dec. 22, 2004); Dkt. 1-1, Petition ¶ 4.)  That action was settled in 2006.  (Petition ¶¶ 4, 22-23.)

[3] Petitioners' intent here is to intervene in the litigation.  As this Court has already found, Petitioners have not shown they have standing for such an extraordinary demand.  (Dkt. 380.) Post-judgment intervention by a non-party is generally forbidden.  *U. S. v. Blue Chip Stamp Co.*, 272 F. Supp. 432, 435-437 (C.D. Cal. 1967), aff'd sub nom. *Thrifty Shoppers Scrip Co v. U. S.*, 389 U.S. 580 (1968).  A court will not re-open a judgment unless in the most unusual circumstances and never without the moving party demonstrating a "strong showing" that intervention is necessary to preserve a right which cannot otherwise be protected.  *Id.* at 435.

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

7

> . . . That Order became final, and this suit is not an appropriate
> procedural mechanism to challenge its finality or validity.
> Accordingly, Plaintiffs cannot prove any set of facts that would
> entitle them to the relief they seek."

*Travers*, 2008 WL 11338126, at *3.

The Judgment regarding Point Molate does <u>not</u> issue any development permits, but, as in *Travers*, Petitioners here disapprove of the City's settlement and seek to vacate the Judgment by alleging violations of the Brown Act.  Likewise, the Judgment became final upon its entry and neither petitioners nor the City have the power or authority to vacate it.  Further, vacating the Judgment and sending the dispute back to litigation, and requiring additional public process "would accomplish nothing more than opening up for public debate" the issue of whether the City should comply with the terms of a federal Court judgment.  *Brehmer v. Planning Bd. of Town of Wellfleet*, 238 F.3d 117, 122 (1st Cir. 2001).

As in *Travers*, this Court must deny Petitioners' request to re-open the Court's final adjudication of this litigation.

**B.      There Is No Case or Controversy for the Court to Adjudicate**

Beyond their inability to up-end a federal court judgment, petitioners also lack standing.  It is a fundamental requirement of any lawsuit, including a petition for writ of mandate, that the complaint present a case or controversy ripe for adjudication.  U.S. Const. art. III, § 2.  In order for the Court to adjudicate Petitioners' claims, Petitioners must establish standing: "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Petitioners bear the burden of proving this threshold standing requirement (*Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 959 (C.D. Cal. 2014) (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)), and they fail to do so.  To show that Petitioners have standing, Petitioners must establish: "(1) injury in fact, (2) causation, and (3) redressability."  *Id.* at 960 (citing *Lujan*, 504 U.S. at 560).

Article III's limitations on judicial power also require that Petitioners establish ripeness by showing that the "harm asserted has matured sufficiently to warrant judicial intervention."  *See*

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

8

1   *Warth v. Seldin*, 422 U.S. 490, 499, n.10 (1975).  When determining whether the facts of a

2   particular case are ripe for adjudication, courts evaluate "[1] the fitness of the issues for judicial

3   decision and [2] the hardship to the parties of withholding court consideration." *Devia v. Nuclear*

4   *Regulatory Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Abbott Labs. v. Gardner*, 387

5   U.S. 136, 149 (1967)).  The ripeness requirement's "basic rationale is to prevent the courts,

6   through avoidance of premature adjudication, from entangling themselves in abstract

7   disagreements over administrative policies . . ." *Id.* (quoting *Abbott Labs.* 387 U.S. at 148-49.).

8       Petitioners fail to establish both standing and ripeness, as Petitioners have neither been

9   injured nor is there any harm that warrants judicial intervention.  Apart from vague, conclusory

10  allegations related to "undisclosed" meetings where the City approved of the settlement, the

11  petition alleges no injury in fact and seeks only *forward*-looking, premature relief from the Court

12  to:

13

14          [S]et aside and void any approvals, entitlements, findings or
            resolutions related to the City's action approving the closed-door
15          settlement of the Guidiville litigation . . .

16          [O]rder compliance with the Brown Act prior to further
            consideration of any related approvals . . .
17
            [P]reclud[e] Respondents from approving land use, development
18          agreement, land disposition agreement, sales or other transactions
            of land at Point Molate unless done in compliance with the Brown
19          Act . . .

20          [R]equir[e] Respondents to tape record their closed sessions
            concerning any Point Molate-related litigation, settlement or
21          decision.

22  (Petition at Prayer ¶¶ 1-3.)

23      There have been no entitlements or approvals under the Judgment to date.  (Amezcua

24  Decl. ¶ 7.)  And, importantly, the Judgment already requires compliance with federal, state, and

25  local laws, including the Brown Act, for any development at Point Molate.  In fact, the Court was

26  explicit that the Judgment does <u>not</u> approve any project, and that the Parties should assert this fact

27  to bar future lawsuits, like this one:

28

The Parties acknowledge, and the Court expressly finds and orders, that this Judgment is not an approval of a project, and the City is responsible for compliance with all federal, state and local laws, regulations, and permits, relating to the Property, including compliance with CEQA.  This finding and order may be asserted by the Parties as a bar to any suit challenging the validity of this Judgment.

(Judgment ¶ 37.)

Moreover, without any pending case or controversy, the petition amounts to a request from the Court that would direct the City to follow established law, which is insufficient to establish standing.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("An interest shared generally with the public at large in the proper application of the Constitution and laws will not do.").  Petitioners thus lack standing, and their petition fails for this additional reason.

### C.      No Facts Alleged Entitle Petitioners to Relief

Even if the Court were to entertain Petitioners' claims, it is apparent from the pleading that there are no facts alleged sufficient to sustain the single Brown Act cause of action.

"To state a cause of action [under the Brown Act], a complaint based on [Government Code section] 54960.1 must allege: (1) that a legislative body of a local agency violated one or more enumerated Brown Act statutes; (2) that there was "action taken" by the local legislative body in connection with the violation; and (3) that before commencing the action, plaintiff made a timely demand of the legislative body to cure or correct the action alleged to have been taken in violation of the enumerated statutes, and the legislative body did not cure or correct the challenged action." *Boyle v. City of Redondo Beach*, 70 Cal. App. 4th 1109, 1116–117 (1999). Additionally, "[e]ven where a plaintiff has satisfied the threshold procedural requirements to set aside an agency's decision, Brown Act violations will not necessarily invalidate a decision. [Petitioners] must show prejudice." *San Lorenzo Valley Cmty. Advocates for Responsible Educ. v. San Lorenzo Valley Unified Sch. Dist.*, 139 Cal. App. 4th 1356, 1410 (2006); *Galbiso v. Orosi Pub. Util. Dist.*, 182 Cal. App. 4th 652, 670-71 (2010); *North Pacifica LLC v. Cal. Coastal Comm'n*, 166 Cal. App. 4th 1416, 1433-434 (2008) (decided under "identical" provision of the Bagley-Keene Act).  A plaintiff cannot establish prejudice simply by alleging that he or she was

1   unable to participate in a meeting. *See Cohan v. City of Thousand Oaks*, 30 Cal. App. 4th 547,

2   555-56 (1994). Rather, the plaintiff must demonstrate that his or her attendance at a meeting

3   would have affected the complained of result in some fashion. *Id.*

### 1.   The Judgment Directly Contradicts Petitioners' Claims

5   Petitioners bring their claims pursuant to section 54960.1 of the Brown Act.[4] (Petition at

6   1 [identifying Brown Act, Gov't Code § 54960.1 as the grounds for the petition for writ of

7   mandate].) That section of the Brown Act sets forth the process by which a mandamus claim may

8   be brought seeking a judicial determination that a *past* action by a legislative body should be

9   rendered null and void. Cal. Gov't Code § 54960.1(a). Yet Petitioners have not alleged any past

10  actions by the City that violate the Brown Act.

11  Petitioners concede that the City was within its rights to discuss settlement confidentially

12  in closed session. (Admin. Motion at 3 ["Under provisions of the [Brown Act], and specifically

13  Gov. Code §54956.9, the "litigation exception," the Council was allowed to exclude the public

14  from those closed sessions and keep confidential the contents of the discussions that occurred

15  therein."].) They also concede that a legislative body such as the City is within its rights to keep a

16  settlement confidential until that settlement has received final court approval. (*Id.* at 3-4 ["the

17  Brown Act allows a legislative body to keep confidential and not disclose to the public a

18  proposed settlement of litigation until that settlement has received final court approval"].) The

19  only apparent argument raised to reverse the Court's Judgment is that the City cannot, without

20  knowledge and participation of the public, commit to "granting a final vested right" or "approving

21  legislative action that requires a public hearing." (*Id.* at 4.)

22  Petitioners vaguely allege that the City has "reached land use decisions which require

23  open meeting discretionary approvals under California law" but point to only one apparent

24  example: an alleged "guarantee" in the Judgment of a minimum amount of residential

---

[4] Petitioners do not bring their action under section 54960, which allows for mandamus claims concerning *future* actions for the purpose of "stopping or preventing violations or threatened violations" of the Brown Act. Therefore, in addition to lacking standing for such requests, Petitioners' prayers for relief concerning future acts by the City are improper and should be stricken.

development.  (Petition ¶ 44.)  Petitioners have failed to allege with any specificity why this would constitute a "final vested right" or "legislative action" committed by the City in violation of the Brown Act.  Petitioners cannot allege any such facts because the Judgment clearly does not confer a final vested right or commit the City to a legislative action.  On the contrary, Paragraph 37 provides:

> The Parties acknowledge, and the Court expressly finds and orders, that ***this Judgment is not an approval of a project, and the City is responsible for compliance with all federal, state and local laws, regulations, and permits, relating to the Property, including compliance with CEQA***.  This finding and order may be asserted by the Parties as a bar to any suit challenging the validity of this Judgment.

(Judgment ¶ 37 (emphasis added).)

Further, the Judgment expressly contemplates that City actions considering any development of Point Molate shall be in full view of the public and with opportunity for public hearing:

> The Court anticipates and expects that City will receive and consider input from the public with respect to the future development of Point Molate.  Nothing herein shall prohibit or limit the City from holding public workshops or receiving any other public input with respect to any future development considered by City pursuant to this Judgment, including selection of a master developer or developers.

(Judgment ¶ 17.)

These express statements in the Judgment directly contradict the vague allegations in the Petition.  The Judgment contemplates a process by which the City will consider discretionary approvals for a development of Point Molate over the course of a two-year period.  (Judgment ¶ 16.)  The Judgment makes clear that all future development of Point Molate, including those approvals, will be conducted in view of and with input from the public.  (Judgment ¶ 17.)  But as set forth above, the Judgment does not guarantee or approve a development or provide any developer with any entitlements.  (Judgment ¶ 37.)  Petitioners' vague suggestions to the contrary are belied by the very Judgment they seek to overturn.  The Court should disregard Petitioners'

allegations as contradicted by the Court's own Judgment.  *See, e.g.*, *Seven Arts*, 733 F.3d at 1254 (disregarding allegations that contradict documents incorporated by reference or judicially noticed facts).

### 2.  Petitioners' Conclusory Allegations Are Not Sufficient to Sustain a Cause of Action

Petitioners lob numerous rhetorical accusations at the City in their petition, yet there are no specific facts pled that could sustain a Brown Act cause of action.  Petitioners' various accusations are precisely the sort of vague and conclusory statements that do not rise to the level of well-pleaded allegations:

- "unannounced serial meeting and in closed session"  (Petition ¶ 1)
- "adopting, in closed session, a pre-determined plan as part of a closed-door settlement of the Upstream lawsuit, attempting to bypass the required zoning and planning and public participation required under the law"  (Petition ¶ 29)
- "unannounced court-mediated settlement conferences" and "unannounced serial communications and consultations"  (Petition ¶ 30)
- "Petitioner also is informed and believes, and thereon alleges, that the Mayor and members of the City Council used direct communications and personal intermediaries, including principals, agents or representatives of Upstream Point Molate, to develop a collective concurrence as to action to be taken on the challenged actions, including communications between the Mayor and members of the City Council, and between members of the Council to other members."  (Petition ¶ 46)

These statements do not set forth specific facts; they are vague references to settlement discussions, *which petitioners have conceded are perfectly appropriate under the Brown Act*, and conclusory statements about unspecified "communications," "collective concurrence," and "challenged actions," from which it is difficult to ascertain what Petitioners are referring to.

Case No. 18-cv-03918-YGR
Respondents' Memo. of Points & Authorities ISO
Motion to Dismiss Petitioners' Petition for Writ of Mandate
sf-3922432

13

1  (Admin. Motion at 3-4.)[5]  Nonetheless, the Court need not assume the truth of such conclusory

2  allegations.  *Iqbal*, *supra* 556 U.S. at 679.

3    Further, petitioners have failed to allege any prejudice as required to sustain a Brown Act

4  claim.  *San Lorenzo Valley Community Advocates for Responsible Education*, *supra*, 139

5  Cal.App.4th at 1410 (2006).  Simply alleging a violation of the Brown Act, without some

6  resulting prejudice, is insufficient.  *See Cohan*, *supra*, 30 Cal.App.4th at 555-56.  Indeed, even if

7  petitioners were granted what they request—public input on the settlement (an opportunity of

8  which they have already availed themselves (Amezcua Decl. ¶ 3)—it would not change the

9  outcome of this Judgment.  The City has no authority to disregard a federal Court Judgment.

10  *Travers*, 2008 WL 11338126, at *3 ("Once [the court's] Order was entered, Defendants had

11  no power or authority to to vacate it" [sic].).   A public hearing would not change that fact.

12  **3.    The Brown Act Expressly Provides for the Authority to Discuss and Settle Legal Disputes in Closed Session**

13

14    In any event, the Brown Act expressly provides the City with the authority to discuss its

15  legal disputes in closed session, to determine legal strategy, and to settle disputes in closed

16  session:

17

18  > Nothing in this chapter shall be construed to prevent a legislative
> body of a local agency, based on advice of its legal counsel, from
> holding a closed session to confer with, or receive advice from, its
> legal counsel regarding pending litigation when discussion in open
> session concerning those matters would prejudice the position of
> the local agency in the litigation.

19

20

21  Cal. Gov't Code § 54956.9(a).  Courts have held that the litigation exemption permits approval of

22  a settlement in closed session.  *See Southern Cal. Edison Co. v. Peevey*, 31 Cal.4th 781, 798–99

23  (2003) [discussing 75 Ops. Cal. Atty. Gen. 14 (1992), which so opined]; cf. *id.* at pp. 800–01

24  [open meeting law for state agencies]; Cal. Gov't Code § 54957.1 (a)(3) [reporting of "Approval

25  _____

26  [5] Further, the Brown Act applies only to "meetings" of local legislative bodies.  Cal. Gov't Code
§§ 54950-63.  The Brown Act defines a "meeting" as a congregation of a majority of the

27  members of a legislative body at the same time and location.  Id. at § 54952.2.  Petitioners have
failed to, and cannot, allege that any communications between the parties included a majority of

28  City Council and therefore constituted a "meeting" under the Brown Act.

given to [legislative body's] legal counsel of a settlement of pending litigation . . . "].  Petitioners themselves acknowledge that public agencies are within their rights to exclude the public from closed sessions to discuss settlement and to keep settlements confidential until receiving final court approval.  (Admin. Motion at 3-4 ["the Brown Act allows a legislative body to keep confidential and not disclose to the public a proposed settlement of litigation until that settlement has received final court approval"].)

Petitioners cite to *Trancas Property Owners Association v. City of Malibu*, 138 Cal. App. 4th 172 (2006) to argue that the litigation exemption does not apply to the settlement discussions in this case.  *Trancas* does not help Petitioners.  First, the *Trancas* court acknowledged that public bodies may discuss settlement and agree to terms in closed session.  138 Cal. App. 4th at 187. Second, in *Trancas*, the City of Malibu "extended guarantees that Trancas's proposed development would not be blocked by future zoning, or be required to comply with zoning density restrictions of whatever age." *Id*. at 179.  Those "absolute commitments" "provide[d] Trancas a red carpet around" the City's zoning and density requirements. *Id*. at 182-83.

This stands in stark contrast to the Judgment in this case.  The Court's Judgment does not grant any entitlements or approvals.  The City has agreed to no "absolute commitment" to exceptions around laws and regulations.  Rather, the Judgment sets forth a schedule for consideration of future development approvals that are to be heard and weighed in on by the public, and must be in full compliance with all applicable laws and regulations.  (Judgment ¶¶ 17, 37.)  Moreover, the suggestion that the parties' settlement negotiations were "used as a subterfuge" (as was the concern in *Trancas*) is belied by the fact that the negotiations were overseen by Judge Spero and that the actual terms of the settlement, which do not include any policy determinations, were approved by the Court.  (Amezcua Decl. ¶ 3.)  The Brown Act's litigation exemption provides for precisely the action taken by the City in this case to resolve the *Guidiville* litigation.  Petitioners have failed to allege any law or facts to the contrary.[6]

---

[6] Petitioners further fail to allege facts sufficient to show that a Brown Act violation, if one were to exist, would require nullification of the Judgment.  In *San Diegans for Open Government v. City of Oceanside*, 4 Cal. App. 5th 637 (2016), the California Court of Appeal recognized "that an agency fulfills its agenda obligations under the [Brown Act] so long as it *substantially* complies

### 4. The Brown Act Prohibits Overturning Actions That Create Contractual Obligations

Finally, the Brown Act provides for exceptions to its enforcement provision where an action complained of has given rise to a contractual obligation upon which a party has detrimentally relied:

> An action taken that is alleged to have been taken in violation of [the Act pursuant to the enforcement provision of Section 65960.1] shall not be determined to be null and void if any of the following conditions exist: … The action taken gave rise to a contractual obligation, including a contract let by competitive bid other than compensation for services in the form of salary or fees for professional services, upon which a party has, in good faith and without notice of a challenge to the validity of the action, detrimentally relied.

Cal. Gov't Code § 54960.1(d)(3).

The City, in full reliance on the validity of a federal Court judgment, has begun in earnest the robust public process contemplated by the Judgment.  Community land use visioning, including City-sponsored fieldtrips to Point Molate and workshops discussing the opportunities at Point Molate, are under way.  (Amezcua Decl. ¶ 6.)  The City recently hired a consultant to assist with the planning process.  (*Id*.)  Reversal of the Judgment at this point would cause all involved, including the citizens of Richmond, undue harm.

## VI. CONCLUSION

For the foregoing reasons, the Court should dismiss the petition with prejudice.

---

with statutory requirements." *Id*. at 642-43 (emphasis added).  *See also*, Cal. Gov't Code § 54960.1(d)(1) (Violative actions shall not be determined to be null and void if the action was taken in substantial compliance with the Act.)  Petitioners have not pled any facts sufficient to show how the City's conduct failed to substantially comply.

Case No. 18-cv-03918-YGR
RESPONDENTS' MEMO. OF POINTS & AUTHORITIES ISO
MOTION TO DISMISS PETITIONERS' PETITION FOR WRIT OF MANDATE
sf-3922432

16

1  Dated:     July 20, 2018                     ARTURO J. GONZÁLEZ
                                                ALEXIS A. AMEZCUA
2                                               ALEJANDRO L. BRAS
                                                MORRISON & FOERSTER LLP
3

4
                                                By:    /s/ *Arturo J. González*
5                                                      Arturo J. González

6                                               Attorneys for Respondents
                                                THE CITY OF RICHMOND, MAYOR TOM
7                                               BUTT, and RICHMOND CITY COUNCIL

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2018, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.


*/s/ Arturo J. González*
Arturo J. González
AGonzalez@mofo.com

Case No. 18-cv-03918-YGR
Respondents' Memo. of Points & Authorities ISO
Motion to Dismiss Petitioners' Petition for Writ of Mandate
sf-3922432

18