Kelly T. Smith 196821
THE SMITH FIRM
5453 Parish Court
Sacramento, CA  95822
T: (916) 930-1961
manager@thesmithfirm.com

Stuart M. Flashman 148396
5626 Ocean View Dr.
Oakland, CA 94618-1533
T: (510) 652-5373
stu@stuflash.com

Attorneys for Plaintiffs
SPRAWLDEF et al

# UNITED STATES DISTRICT COURT
# IN THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRAWLDEF, et al,<br><br>    Petitioners,<br><br>vs.<br><br>CITY OF RICHMOND, et al,<br><br>    Respondents. | Case no. 18-cv-03918-YGR<br><br>**PETITIONERS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PETITION ON THE MERITS**<br><br><u>Hearing:</u><br>Date:     February 5, 2019<br>Time:    2:00 p.m.<br>Room:   1<br><br>**Before the Hon. Judge Yvonne Gonzalez Rogers** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 4

II. THE RECORD EVIDENCE ............................................................................................... 5

    1. The casino development and Upstream Point Molate ............................................... 6

    2. Land use planning, General Plan and zoning............................................................. 7

    3. The *Guidiville* settlement and its closed-door approval. ......................................... 9

    4. The land-use aspects of the *Guidiville* settlement................................................. 10

III. STANDARD OF REVIEW .............................................................................................. 11

IV. ARGUMENTS .................................................................................................................. 12

    A. Because the *Guidiville* Settlement Was a Land Use Action, a Properly Noticed Open Meeting, with Public Input, was Required. ....................................................... 13

        1. The substantive land-use acts under the *Guidiville* settlement must be done in public............... 13

        2. The *Guidiville* settlement features the "functional equivalent" of land-use actions..................... 14

    B. The "Pending Litigation" Exception Does Not Extend to Land Use "Settlement." ......................... 15

V. CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Vista Unified School District* (2000) 82 Cal.App.4th 672 ............................................................. 11
*Congregation Etz Chaim v. City of Los Angeles* (C.D. Cal., May 5, 2009, No. CV97-5042 CAS (EX)) 2009 WL 1293257 ............................................................................................................................. 13
*Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781 ............................................................. 15
*Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194 ................................................................. 11
*Keith v. Volpe* (9th Cir.1997) 118 F.3d 1386 ............................................................................................ 13
*League of Residential Neighborhood Advocates v. City of Los Angeles* (9th Cir. 2007) 498 F.3d 1052 . 13
*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997 ... 14
*Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471 .............................................. 15
*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948 .................................................... 11
*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904 ................................................................ 11
*Smith v. City of San Francisco* (1990) 225 Cal.App.3d 38 ........................................................................ 13
*Trancas Property Owners Association v. City of Malibu*, (2006) 138 Cal. App. 4th 172 .................. 12, 13
*Wolfe v. City of Fremont* (2006) 144 Cal.App.4th 533 ............................................................................. 16

**Statutes**

Gov. Code §54962 ....................................................................................................................................... 15
Gov. Code §65090 ....................................................................................................................................... 12
Gov. Code §65091 ....................................................................................................................................... 12
Gov. Code §65355 ....................................................................................................................................... 12
Gov. Code §65852 ....................................................................................................................................... 12
Gov. Code §65854 ....................................................................................................................................... 12
Gov. Code §65860 ....................................................................................................................................... 12
Gov. Code §65867.5 .................................................................................................................................... 12
Government Code §§ 54950 et seq. ............................................................................................................. 11
Government Code §54953 ........................................................................................................................... 11
Government Code §54954.2 ........................................................................................................................ 15
Government Code §54954.5 ........................................................................................................................ 16

**Constitutional Provisions**

Cal. Const., Art. I, §3(b) .............................................................................................................................. 11

# I. INTRODUCTION

Through the *Guidiville*[1] stipulated judgment, respondent City of Richmond entered into a land-use agreement to develop Point Molate, hundreds of San Francisco Bay shoreline acres transferred to the City from the Navy. Such City action requires noticed public hearing under California's open-meeting Brown Act and land use laws. Instead the City Council approved the settlement behind closed doors.

The early-2018 *Guidiville* settlement was reached between the City as defendant against the developer, Upstream Point Molate and the landless Guidiville band of Indians (hereafter "Upstream"). Upstream sued the City when its development plan for a casino floundered.

Petitioners here are Richmond citizens engaged in the City's planning of Point Molate's land-use destiny. Hoping to assure that the site achieved its public use potential, citizens sat through years of meetings, changed the course of City politics, and engaged in countless "visionings" and charettes.

That same Richmond public was incensed when instead of an open process, the City turned its back on their participation and settled with Upstream in secret, without public notice or participation.

California's Brown Act requires that all meetings of governing bodies be announced and conducted in public. That requirement is subject to exceptions, and the City will claim that conferring with legal counsel regarding litigation is one of those exceptions.

But here the *Guidiville* settlement set forth specific land use entitlements and findings which take it far beyond any Brown Act exceptions. Under the Brown Act all presumptions are in favor of the public's right to open, transparent conduct by their elected officials.

The administrative record confirms that the City's mayor, city council, the developer, and the court mediator crafted and locked in Point Molate's future land use without either notice to the public of their meetings nor any opportunity for timely public participation in the decisions made. Such activities, including preliminary concurrence, do not qualify for the Brown Act's closed session exceptions.

Petitioners bring this action under Gov. Code §54960.1 and Code of Civil Procedure §1085 to ensure their constitutional right to open government. A unique San Francisco Bay treasure, Point Molate's future land use determination deserves public participation and transparent government.

---

[1] *Guidiville Rancheria of Cal. et al v. United States of America et al*, Northern District of California case no. 4:12-cv-01326.

4

PETITIONERS' POINTS & AUTHORITIES IN SUPPORT OF PETITION

## II. THE RECORD EVIDENCE

Point Molate, on the San Francisco Bay shore of the City of Richmond, is a decommissioned United States Navy fuel depot. AR 007. Historically Point Molate's nearly 300 acres[2] have been used for Chinese shrimping camps, Mexican ranchos and missions, and in the early 1900s for the largest winery in California. AR 011-012. "Point Molate Village," including later-demolished Winehaven Hotel, was designated as a historic district in 1978.

The U.S. Navy acquired the site in 1942 for war use as a fuel depot, building a lengthy pier from the shoreline. AR 013.

In 1996, special congressional legislation enabled the Department of Defense to transfer Point Molate directly to the City of Richmond, enabling the City to control Point Molate development. AR 073.

However, intensive investigation into the condition of the site was necessary first. This was especially so regarding the extensive contamination left from decades of military and industrial use. AR 079-082.

As a result of this status, the City faced numerous obstacles in developing the Point Molate property, including its location next to an oil refinery, a historic district on the National Register of Historic Properties, large unfunded infrastructure and cleanup challenges, buildings unfit for habitation due to structural and code deficiencies and the presence of lead and asbestos, proximity of the site to the San Francisco Bay shoreline with attendant permitting challenges and its recreational and wildlife habitat considerations, and obligations made to obtain ownership of the property from the Navy. AR 119-126.

As required by the Defense Base Closure and Realignment Act, the City prepared a "conceptual" Reuse Plan for the Navy in 1997. AR 7.

After inviting private development proposals for potential development, in 2003 the City selected developer Upstream Point Molate to present a proposal for development of the property as a casino to be sold to the landless Guidiville band of Indians. In 2004, the City entered into a Land Disposition Agreement (LDA) with Upstream to pursue the casino development. AR 5019.

---

[2] Other references place the size at 400 acres, *viz* AR 50190, but much of that is below the high-water tideline.

**1. The casino development and Upstream Point Molate**

After reaching the disposition agreement with the City, Upstream Point Molate sought to obtain the government approvals necessary to develop the Point Molate casino, including approval from the various federal agencies such as the Navy. AR 5019.

In 2004, petitioners SPRAWLDEF and CESP filed an action challenging the City's transactions, including the Land Disposition Agreement, due to the failure of the City and Upstream to comply with the requirements of the California Environmental Quality Act (CEQA).[3]

Settlement of that action was reached in October 2010, with the addition of extensive environmental protections, community benefits and economic improvements by the developer. However, by that time, the City focused on other obstacles to the development, including the approval by the United States Department of the Interior's Bureau of Indian Affairs (BIA).

Ultimately, Upstream Point Molate failed to obtain necessary federal approvals and the City withdrew its support of the casino project. AR 5019.

Thereafter, on March 16, 2012, Upstream Point Molate filed suit in the Northern District federal court, seeking declaratory relief against BIA and federal government defendants under multiple causes of action, and against the City of Richmond for breach of contract. Upstream alleged the City failed good faith duties to promote the project to the federal agencies. Upstream also alleged that the City failed to approve the project environmental impact statement/report prepared for compliance with the California Environmental Quality Act and the National Environmental Policy Act. *Guidiville Rancheria of California et al v. United States of America et al*, federal Northern District of California case no. 4:12-cv-01326.

The federal district court granted defendants' motion to dismiss on the pleadings. *Guidiville Rancheria of California v. United States* (N.D. Cal. 2013) 5 F.Supp.3d 1142, 1149.

Upstream appealed. In 2017, the Ninth Circuit remanded with leave to amend the actions for breach of contract and good faith and fair dealing. The appeal court affirmed dismissal of the CEQA cause of action. *Guidiville Rancheria of California v. United States* (9th Cir. 2017) 704 Fed.Appx. 655.

---

[3] *CESP v. City of Richmond et al*, Marin County case no. 052241.

PETITIONERS' POINTS & AUTHORITIES IN SUPPORT OF PETITION

**2. Land use planning, General Plan and zoning.**

The City's proposed zoning for the site at the time of its 1997 Reuse Plan was "Community and Regional Recreational" and "Marine Industrial," with overlays to protect ridge and view lines. AR 118.

According to the Reuse Plan, the historic Winehaven district is the "inspiration and theme for reuse of Point Molate." AR 25. The remaining 35 buildings are almost all in the historic district. AR 025-028. See the series of maps AR 29-35.

At its April 24, 2012 meeting, the City Council approved the City General Plan 2030 and its supporting environmental impact report but decided to "Refer the Point Molate land use designation to staff for further [work] on certain land use modifications consistent with remediation funding available." AR 4003-4004.

"The resolution included a provision directing staff to further review the Land Use Designations (LUD's) for Point Molate in the General Plan and that this should be done in conjunction with public input and an open process through the Planning Commission and City Council." AR 5017 (staff report November 21, 2016).

"The Point Molate Community Advisory Committee (Point Molate CAC), a City advisory committee established by the City Council with members appointed by the Mayor, was designated as the primary input stakeholder." AR 5018.

The General Plan places Point Molate within the San Pablo Peninsula as "a large land mass located west of the City. Most of the peninsula is designated as open space or heavy industrial use." AR 4136.

The General Plan's Land Use and Urban Design description for Point Molate emphasizes its historical character. Its general plan use reflects the 1997 Reuse Plan "designated as a combination of Business/Light Industrial, Medium-Density Residential, Low-Density Residential, Open Space and Parks and Recreation." AR 4168.

Policy LU 4.4 for contaminated areas "such as the Winehaven complex at Point Molate," plans remediation "into mixed-use centers that provide the maximum benefit to the community without compromising the integrity of the surrounding natural areas." AR 4195.

Action LU 4E for Point Molate redevelopment seeks to "Identify and incorporate opportunities for public open space and recreational facilities." AR 4197.

Policy LU 5.2, "A Mixed-Use Waterfront," features Point Molate's Winehaven District as a key feature. AR 4199.

Reference to the Point Molate Reuse Plan in the General Plan notes: "The Plan's overall concept involves retaining and reusing many of the site's historic buildings and constructing new buildings and open space areas." AR 4210.

Point Molate still awaits state-compliant zoning and general planning. In 2016, this status was recognized in zoning code ordinance 16-16, placing the area in an Interim Study (IS) Overlay District "…where the pre-existing zoning district has been deemed inappropriate under the General Plan and assignment of a new classification and new zoning awaits completion and Council adoption of a specific plan or other planning and zoning study." AR 4529.

"IS-3 includes the Point Molate study area, where the City Council has initiated a review of appropriate zoning, development standards and related open space for General Plan implementation in the context of the Point Molate Reuse Plan." *Id*.

The ordinance requires that approval of any development in an IS-3 area would require a conditional use permit and further findings "that the proposed use will not conflict with the land use and development policies established for the area in the General Plan and being considered in proposed specific plans or other planning and zoning studies." AR 4530, ordinance 15.04.304.040, subsections A and B.

The IS-3 zone was vaguely addressed in the certification of a CEQA "addendum" for the General Plan, which indicates that the new zoning would maintain Point Molate in "open space." AR 4259.

"Moreover, the proposed Zoning Map rezones 308 acres of land in Point Orient, Point Molate, and Point San Pablo and along the City's southern shoreline west of the I-80, which could be developed for industrial uses, to an open space district." AR 4259.

However, that placeholder status expired December 31, 2017. AR 4529 (bottom).

The Zoning Map at AR 4282 shows the IS overlaying zoning for parks, open space, general commercial, light industrial and an area for multifamily residential.

Thus, Point Molate continues to await land-use General Plan and zoning designation required for its development.

**3. The *Guidiville* settlement and its closed-door approval.**

The Richmond City Council's November 21, 2017 meeting agenda included an item to continue the Point Molate public input process and to set three public workshops. AR 5002 (item H-28).

The staff report on the H-28 item recommended the workshops, noting that the City's 2012 General Plan included "a proviso that the Point Molate property's Land Use Designations be subject to review and study, and that staff undertake a public process to collect community input and conduct an open process to include the Planning Commission to establish Land Use Designations for adoption as an amendment to the 2030 General Plan." AR 5020.

The staff report noted that: "The requirements of this proviso have not yet been fulfilled."

At the November 21 meeting, agenda item H-28 was pulled from consideration by Mayor Tom Butt. AR 5007 (top). However, item K-3 on the same agenda, to direct staff to develop public zoning input and "ensuring the public has access to all City activity reports on Point Molate," was passed after lengthy public testimony, including that of the individual petitioners in this case. AR 5005, 5015.

Shortly after, on December 12, 2017, court notice was filed in the *Guidiville* case of a February 6, 2018 settlement conference. AR 5026-5028. The City Council's January 26, 2018 closed session agenda noticed the *Guidiville* litigation, but no actions were reported out of that closed session. AR 5032, 5038.

There was no disclosure of the February 6 *Guidiville* settlement conference on the City's February 6 council agenda. AR 5045. But at the meeting, the City Attorney "requested that an urgent Closed Session item be added to the agenda regarding a federal court order concerning Point Molate." AR 5050. The council adjourned to closed session but reported nothing out. AR 5051.

The *Guidiville* litigation was noticed for the February 20, 2018 council meeting closed session. AR 5059. Nothing was reported out from the closed session. AR 5066. The *Guidiville* litigation was again noticed for the March 20, 2018 council closed session. AR 5076. Nothing was reported out. AR 5083.

On April 12, 2018 stipulated judgment in the *Guidiville* case, pursuant to settlement of the parties, signed by the City April 4, 2018, was filed. Beginning AR 5088. Entry of the settlement was accompanied by a public notice from City officials. Beginning AR 5432.

At the City Council's April 17, 2018 meeting, a "presentation on the Judgment" was discussed. AR 5444. The City's outside legal counsel noted that the settlement called for "a minimum of 670

residential units at Point Molate." AR 5454-9:10; 5455-17-18 ("…discretionary City approvals shall allow for a minimum of 670 residential units.")

Multiple public speakers objected to the settlement's closed process that circumvented public input. Beginning AR 5459. Speakers complained that undisclosed deals had been reached, (AR 5469), that Point Molate was a terrible place for housing because access was limited to a single road, (AR 5471-23:25), and that their civic efforts on the site were wasted (5476:22-5477:10).

Councilmember Martinez, who sat on the Point Molate Advisory Committee before his election, explained that housing at Point Molate was an especially controversial land use there. Beginning AR 5499:3, especially 5503:23-5504:20.

As required by the Brown Act, a "cure-and-correct" letter representing the petitioners in the instant matter was delivered to the City, dated April 30, 2018. AR 5576-5577. The City responded to the cure-and-correct letter May 4, 2018, denying any Brown Act violation. AR 5578-5579.

**4. The land-use aspects of the *Guidiville* settlement.**

Section 8 of the *Guidiville* stipulated judgment defines the "Discretionary City Approvals" required from the City. AR 5090. That section states: "The Discretionary City Approvals *shall* allow for a minimum of 670 residential units…" AR 5090:24-25 (emphasis added).

Section 16 of the stipulated judgment requires that: "City *shall* provide Discretionary City Approvals, as defined in Paragraph 8 of this Judgment." AR 5093:3-4 (emphasis added).

The agreement finds that the 1997 Reuse Plan's references to 30 percent development space and 70 percent open space "shall not change." AR 5093:10-14 (section 18). Thus, without any properly adopted land use plan, the settlement agreement *dictates* fundamental underlying land use for the site.

The same section notes historic structures and without further findings commits that "all of which *shall* be preserved *for adaptive reuse*." (Emphasis added.) Again, without formal process or public input, the settlement made binding decisions on the reuse of the historic properties.

Section 20 allows that the Discretionary Approvals "may allow for more than 670 residential units and non-residential use, insofar as this is consistent with the overall open space preservation goals of the Point Molate Reuse Plan." There was no corresponding provision allowing for less than 670 units.

## III. STANDARD OF REVIEW

California citizens have enshrined the right to open public meetings in their constitution. In 2004, they approved Proposition 59, the "Sunshine Amendment," enacting Cal. Const., Art. I, §3(b), to guarantee public access to government meetings.

This constitutional right is enacted through the Ralph M. Brown Act, California Government Code §§ 54950 et seq. Referred to as the "Brown Act," it requires that "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend," except as otherwise provided by the Act. Gov. Code §54953.

Gov. Code §54954.2 requires: (a)(1) "At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session," and (a)(3) "No action or discussion shall be undertaken on any item not appearing on the posted agenda…"

Gov. Code §54953 requires (a) "All meetings of the legislative body of a local agency shall be open and public…" and (c)(1) "No legislative body shall take action by secret ballot, whether preliminary or final." *Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 207 (open meetings the "keystone" of the Brown Act.)

Closed sessions are prohibited other than as specified in the Act or in other designated statutes. The City here relied upon Gov. Code, § 54956.9(a), the "pending litigation" exception, to enter the *Guidiville* settlement in closed session: "Nothing in this chapter shall be construed to prevent a legislative body of a local agency, based on advice of its legal counsel, from holding a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation."

Exceptions authorizing closed sessions are <u>construed narrowly</u>, while the Brown Act "sunshine law" is "construed liberally in favor of openness in conducting public business." *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 917, citing *Bell v. Vista Unified School District* (2000) 82 Cal.App.4th 672, 682. *Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 (construing "statutory framework as a whole, keeping in mind the policies and purposes of the statute.").

# IV. ARGUMENTS

The Brown Act's "pending litigation" exception does not allow the City to evade the open political process necessary to set its land use.

The *Guidiville* settlement agreement mandates City "discretionary approvals." These "discretionary approvals" include not only approval of 670 housing units, they also dictate the property's overall land-use, all based on a 1997 Reuse Plan that is neither binding on, or even relevant to the state's statutory land-use planning and zoning law.

Those state land use planning and zoning statutes require open public decisions, including Gov. Code §65852, §65867.5, §65090 (public notice of land use plans), §65091 (public notice for projects), §65355 (public hearing to amend General Plan), §65854 (planning commission recommendation) and §65860 (zoning consistency with General Plan). A development agreement "shall not be approved unless the legislative body finds that the provisions of the agreement are consistent with the general plan and any applicable specific plan." Gov. Code §65867.5.

The plain text of the City's General Plan and zoning code makes clear that any Point Molate land use requires final zoning and General Plan conformance before development.

Litigation settlement cannot be used to evade transparent land-use planning and entitlement. *Trancas Property Owners Association v. City of Malibu*, (2006) 138 Cal. App. 4th 172.

In *Trancas*, the court held that the "litigation exemption" to the Brown Act does not allow for settlement approval in closed session where closed negotiations are "used as a subterfuge to reach nonlitigation oriented policy decisions." *Trancas, supra,* at 186.

Any "implied allowance" for closed-session settlements under the Brown Act "thus may be subject to limits," *Trancas* held. "And whatever else it may permit, the exemption cannot be construed to empower a city council to take <u>or agree to take</u>, as part of a non-publicly-ratified litigation settlement, action that by substantive law may not be taken without a public hearing and an opportunity for the public to be heard." *Trancas, supra,* at 186. Emphasis added.

The settlement agreement's 670-minimum unit commitment, the timeline guarantees and Upstream's options and entitlements under the *Guidiville* settlement, were obtained by the same kind of subterfuge that *Trancas* chastises.

12
PETITIONERS' POINTS & AUTHORITIES IN SUPPORT OF PETITION

A. BECAUSE THE *GUIDIVILLE* SETTLEMENT WAS A LAND USE ACTION, A PROPERLY NOTICED OPEN MEETING, WITH PUBLIC INPUT, WAS REQUIRED.

Forging a land-use and development agreement in a settlement requires open meeting and notice of such open meetings. Instead the *Guidiville* parties used the court's mediation to cloak their subterfuge of those open meeting requirements. Because of this subterfuge, the City violated the Brown Act and its "pending litigation" exception does not apply.

**1. The substantive land-use acts under the *Guidiville* settlement must be done in public.**

Municipalities may not waive or consent to a violation of their zoning laws, which are enacted for the benefit of the public. *League of Residential Neighborhood Advocates v. City of Los Angeles* (9th Cir. 2007) 498 F.3d 1052, 1055-56 ("A federal consent decree or settlement agreement cannot be a means for state officials to evade state law.")

In *League*, a congregation filed action after the City denied a conditional use permit to operate its synagogue in an area zoned solely for residential use. The City entered a settlement agreement allowing the synagogue to operate under certain conditions. The neighborhood League filed to void the settlement claiming it "effectively" granted a conditional use permit "without providing notice and a hearing to the affected community." *Id* at 1053. The lower court found no CUP and dismissed under FRCP 12(b).

The Ninth Circuit reversed. Citing to the settlement's substance over form, the Ninth Circuit in *League* cited with favor *Trancas, supra*. See California Civil Code §3513 ("a law established for a public reason cannot be contravened by a private agreement.")

"Any such agreement to circumvent applicable zoning laws is invalid and unenforceable." *Smith v. City of San Francisco* (1990) 225 Cal.App.3d 38, 55. Also, *Keith v. Volpe* (9th Cir.1997) 118 F.3d 1386, 1393 (state officials "could not agree to terms which would exceed their authority and supplant state law").

California's zoning laws are such substantive law, requiring public hearings. *Trancas, supra* at 182, citing Gov. Code §65905. The weight of this line of caselaw makes clear that a closed session settlement can violate the Brown Act based on the "functional equivalent" of zoning variance or entitlements. *Congregation Etz Chaim v. City of Los Angeles* (C.D. Cal., May 5, 2009, No. CV97-5042 CAS (EX)) 2009 WL 1293257, at *3.

**2. The *Guidiville* settlement features the "functional equivalent" of land-use actions.**

The *Guidiville* settlement grants to Upstream Point Molate *Trancas*'s "functional equivalent" of a variance from the City's yet-to-be approved zoning and development standards, which require public hearing and open official action.

Under the settlement agreement, Upstream Point Molate effectively gets a pre-approved variance, without public hearing. Worse yet, perhaps, because the settlement agreement dictates the level of residential units, any subsequent land use decisions must comport with this baked-in housing number.

Under paragraph 28 of the *Guidiville* judgment, "Upstream and Tribe, or either of them as designated by Upstream and the Tribe in writing, and any of their transferees, may pursue development of the parcels in accordance with the Discretionary City Approvals, or may seek additional or new <u>entitlements</u> for the development of the parcels beyond the Discretionary City Approvals required by this Judgment…" Emphasis added. The approvals are <u>"required"</u> by the judgment.

Read in conjunction with paragraph 8 of the *Guidiville* settlement, regardless of zoning or General Plans, Upstream and Tribe are <u>entitled</u> to build *at least* 670 residential units. ("Discretionary City Approvals <u>shall</u> allow for a minimum of 670 residential units…") Emphasis added.

The *Guidiville* settlement is thus a development agreement in the guise of litigation settlement.

"A development agreement is a legislative act that must be approved by ordinance, and it 'shall not be approved unless the legislative body finds that the provisions of the agreement are consistent with the general plan and any applicable specific plan.'" *Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1013.

The *Guidiville* settlement was used to grant Upstream a development agreement, when such an agreement must be approved in public, with mandatory findings that the agreement is consistent with general planning and zoning. Point Molate has neither general planning or zoning. Thus, there can be no findings of consistency.

The City's closed session acceptance of the *Guidiville* settlement constitutes an end-run around the open policy determinations that must be conducted in public. The settlement is the sort of public process subterfuge which the *Trancas* court found to be a violation of the Brown Act.

B. The "Pending Litigation" Exception Does Not Extend to Land Use "Settlement."

The Brown Act's closed meeting exceptions do not extend to authorizing the substantive land use concessions included in the *Guidiville* settlement.

Gov. Code §54962 expressly limits closed sessions: "Except as expressly authorized by this chapter, … no closed session may be held by any legislative body of any local agency."

Gov. Code §54956.9(a) allows closed sessions of the legislative body "to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation."

Under the Brown Act, statutory exceptions authorizing closed sessions of legislative bodies are construed narrowly. *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471, 501.

In *Page*, the court held that a judicial mediation involving a legislative body was not within the "pending litigation" exception. Nor does the exception apply to "fact finding meetings and deliberations leading up to those actions." *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471, 502. "Deliberation in this context connotes not only collective decisionmaking, but also 'the collective acquisition and exchange of facts preliminary to the ultimate decision.'" *Id* at 502. Nor does the exemption allow a closed session to "discuss and negotiate with an adversary and her counsel a matter of pending litigation." *Id.*

The City makes much of its claim that the *Guidiville* settlement was "guided," "overseen" and "mandated" by the Court. As *Page* holds, collective decisionmaking under a mediator, court ordered or not, does not qualify for closed session action under narrow construction of that Brown Act exception.

A "meeting" of the local government is a gathering of more than a majority of the members to address a matter. Gov. Code §54952.2. Pursuant to Gov. Code §54952.2(b): "any use of direct communication, personal intermediaries, or technological devices that is employed by a majority of the members of the legislative body to develop a collective concurrence as to action to be taken on an item by the members of the legislative body" is prohibited. See *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 684.

A "meeting" also includes any collective acquisition or exchange of facts preliminary to ultimate decision. *Frazer v. Dixon Unified School Dist.* (1993) 18 Cal.App.4th 781. Gov. Code §54954.2 requires

posting of an agenda of a meeting; Gov. Code §54954.5 requires description of a closed meeting's purpose.

In negotiating the *Guidiville* settlement, city officials met with the *Guidiville* litigants and conveyed settlement terms to the closed sessions, thus breaching any "litigation privilege."

The subject discussed at all these meetings was the land use entitlements to be granted to the developer under the ultimate stipulated judgment. That the entitlements were discussed in these closed, unannounced meeting is manifest in the stipulated judgment, and therefore undeniable.

Gov. Code §54952.3 explicitly applies the Brown Act to any gathering of a quorum of the legislative body "simultaneously or in serial order." "If that shared view was reached 'collectively,' the Brown Act was violated." *Wolfe v. City of Fremont* (2006) 144 Cal.App.4th 533, 549.

While all the details have yet to be included in the record, it is clear that the Mayor and Council conferred serially and through intermediaries, including Upstream representatives and the Court-appointed mediator, to reach a "preliminary or final" decision on the settlement.

The City Council reached a collective concurrence as to action to be taken on the challenged decisions, including agreement on the significant terms of the decision that became the stipulated judgment in the *Guidiville* action.

### V. CONCLUSION

The Court is respectfully requested to grant the petition and issue a writ of mandate and order directing the City to vacate any approvals of the settlement agreement until it is noticed for open hearing and the proper findings and actions adopted for such a land-use decision.

DATE: December 10, 2018

                                          KELLY T. SMITH
                                          Attorney for Petitioners
                                          SPRAWLDEF ET AL