1 | Kelly T. Smith 196821
THE SMITH FIRM
2 | 5453 Parish Court
Sacramento, CA 95822
3 | T: (916) 930-1961
M: (916) 607-1998
4 | manager@thesmithfirm.com

5 | Stuart Milton Flashman 148396
5626 Ocean View Dr.
6 | Oakland, CA 94618-1533
T: (510) 652-5373
7 | stu@stuflash.com

8 | Attorneys for Petitioners SPRAWLDEF et al

9 | **UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF CALIFORNIA**
10 |

11 |

12 | SPRAWLDEF, et al,     Case no. 18-cv-03918-YGR

13 |      Petitioners,     **PETITIONERS' NOTICE & MOTION FOR PRELIMINARY INJUNCTION; SUPPORTING POINTS & AUTHORITIES**

14 |    vs.     [FRCP 8(a)(1)(C), 62(c), Civil L.R. 7-2, 65-2]

15 | CITY OF RICHMOND, et al,

16 |      Respondents.     Hearing:
Date:    September 3, 2019

17 |     Time:    2:00 p.m.
Room:    1

18 |

19 |     **Before the Hon. Judge Yvonne Gonzalez Rogers**

20 |

21 | <u>**NOTICE AND MOTION**</u>

22 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23 | PLEASE TAKE NOTICE that on September 3, 2019, at 2:00 p.m., or as soon thereafter as the

matter may be heard before the Honorable Judge Yvonne Gonzalez Rogers, in Courtroom 1 of the

24 |

25 | United States District Court of the Northern District of California, located at the Ronald V. Dellums

26 | Federal Building, 1301 Clay Street, Oakland, California, petitioners SPRAWLDEF et al will move for a

27 | preliminary injunction pursuant to Federal Rule of Civil Procedure 8(a)(1)(C) and 65(c).

28 |

1

1    Petitioners seek the preliminary injunction order to preserve the status quo pending the appeal of

2  respondent Guidiville Band of California. Petitioners' motion is based on the following Memorandum of

3  Points and Authorities, the pleadings, administrative record, all records and files in this action, and such

4  written or oral arguments as may be presented before the Court.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES

1

2

## MEMORANDUM OF POINTS & AUTHORITIES

3

4

## TABLE OF CONTENTS

5

6

I. SUMMARY .................................................................................................................. 5

7

II. BACKGROUND ......................................................................................................... 6

8

III. STATEMENT OF LAW ............................................................................................ 7

9

IV. ARGUMENTS ........................................................................................................... 8

10

    1. A strong showing has been made of the City's Brown Act violation............................ 8

11

    2. The City's furtherance of its Point Molate development scheme irreparably harms the public's

12

right to correct past Brown Act violations and prevent further ones. ................................ 9

13

    a. Any development right vesting will harm all parties if the Court finds Brown Act violation.. 10

14

    b. City consultant, attorney and expert expenditures cannot be recouped.................. 10

15

    c. City expenditures will interfere with good faith environmental impact analysis. .................. 11

16

    3. The Court, under the *Guidiville* stipulated judgment, can toll its implementation...................... 12

17

    4. The City's long-delayed development scheme will not be irreparably harmed. ......................... 12

18

    5. The public interest in open government is paramount................................................. 13

19

V. CONCLUSION ........................................................................................................... 14

20

21

22

23

24

25

26

27

28

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

*Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 U.S. 531 ....................................... 9, 13

*Burlington Northern & Santa Fe Ry. Co. v. Vaughn* (Ninth Cir. 2007) 509 F.3d 1085 ............................ 7

*Chaffee v. San Francisco Library Com.* (2004) 115 Cal.App.4th 461 ................................................... 13

*Earth Island Institute v. Carlton* (Ninth Cir. 2010) 626 F.3d 462 ........................................................ 7

*National Grange of the Order of Patrons of Husbandry v. California State Grange* (E.D. Cal. 2016) 182 F.Supp.3d 1065 .......................................................................................................................... 7

*Natural Resources Defense Council, Inc. v. Southwest Marine Inc.* (9th Cir. 2001) 242 F.3d 1163 ........ 7

*Perfect 10, Inc. v. Amazon.com, Inc.* (Ninth Cir. 2007) 508 F.3d 1146 .................................................. 7

*Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116 ................................................................ 11

*Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172 ...................................... 6

*U.S. v. El-O-Pathic Pharmacy* (Ninth Cir. 1951) 192 F.2d 62 ............................................................... 7

*U.S. v. Odessa Union Warehouse Co-op* (Ninth Cir. 1987) 833 F.2d 172 ............................................. 9

*Winter v. Natural Resources Defense Council, Inc.* (2008) 555 U.S. 7 ................................................... 7

**Statutes**

California Government Code §54960.1(d)(3) .......................................................................................... 12

Government Code §§ 54950 et seq. ...................................................................................................... 13

Government Code §54953 ...................................................................................................................... 13

Government Code §54960(a) .................................................................................................................... 9

**Rules**

Federal Rule of Appellate Procedure 8(a)(1)(C) ................................................................................... 7

Federal Rule of Civil Procedure 62(c) .................................................................................................... 7

**Constitutional Provisions**

Cal. Const., Art. I, §3(b) ......................................................................................................................... 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES

1

**I. SUMMARY**

2      Petitioners, environmental groups and Richmond city residents, seek a preliminary injunction to

3  preserve the status quo during the appeal of respondent Guidiville Rancheria (Tribe), filed June 24,

4  2019. Without it, the City of Richmond will evade the open government mandates of state law.

5      Petitioners filed for writ of mandate (ECF 2, Exhibit A) to order Brown Act compliance after the

6  Richmond City Council decided in closed session to enter into stipulated judgment with the Tribe and its

7  developer, Upstream Point Molate, in *Guidiville Rancheria of California et al v. United States of*

8  *America et al*, federal Northern District of California case no. 4:12-cv-01326 ("*Guidiville*").

9      The City's motion to dismiss on various grounds was withdrawn after denial was imminent. As

10  briefing was filed on the merits, the Guidiville Tribe and Upstream Point Molate were amended as

11  respondents. The Tribe moved to dismiss, claiming it was indispensable to the case but could not be

12  joined as it had sovereign immunity. That motion to dismiss was also denied.

13      Thereupon the Tribe appealed to the Ninth Circuit.

14      Petitioners maintain that respondents have used the stipulated judicial settlement in *Guidiville* to

15  circumvent the open government process required for land use decisions such as the massive Point

16  Molate development sought by the *Guidiville* parties.

17      While the Tribe, the City's *Guidiville* settlement partner, protracts resolution of the Brown Act

18  question, the City has used the delays to proceed with its Point Molate development schemes. It has

19  entered into exclusive development agreement with a developer. The City has proceeded with its

20  development plans despite never having conducted open meeting to approve the land use plans in the

21  *Guidiville* stipulated judgment.

22      Decision in this matter finding that the City violated by Brown Act would be hollow should the City

23  proceed with land use development during the pendency of this case and the Tribe's appeal. City spend-

24  ing of more than $1 million in public revenues for the project is an irreparable harm to the public fisc.

25  Analysis of significant environmental impacts risks being shunted in the City's rush to advance the

26  project while the open government question is litigated.

27      Therefore, petitioners request that the Court order the injunction of the *Guidiville* settlement's Point

28  Molate development until the merits of the Brown Act petition are decided.

**II. BACKGROUND**

Point Molate, on the San Francisco Bay shoreline of the City of Richmond, is a decommissioned United States Navy fuel depot. Administrative Record (AR) 007. ECF 37. In 1996, the Department of Defense transferred Point Molate to the City of Richmond, enabling the City to control its development. AR 073.

In 2004 the City entered into a Land Disposition Agreement (LDA) with Upstream Point Molate (Upstream) to pursue development of a casino to be operated by the Guidiville Tribe. AR 5019.

Point Molate development is beset with obstacles, including its location next to an oil refinery, historic district restrictions, unfunded infrastructure and cleanup, structural and code deficiencies, lead and asbestos, shoreline, recreation and wildlife permitting challenges and transfer obligations. AR 119-126.

Even now, environmental constraints on development persist. As indicated by petitioners' Exhibit F, a March 2019 report to the City Council, San Francisco Bay pollution from the site has resulted in a Regional Water Quality Control Board cleanup order.

After Upstream failed to obtain federal government approvals, the City withdrew its casino project support. AR 5019. Upstream filed *Guidiville*. In 2017, after the court dismissed *Guidiville*, the Ninth Circuit remanded with leave to amend the breach of contract actions against the City. On April 12, 2018 stipulated judgment was entered in *Guidiville*, pursuant to settlement of the parties. Beginning AR 5088.

The petition at bar was filed alleging open meeting violation. ECF 2. Petitioners allege the *Guidiville* settlement granted land use rights to Upstream and the Tribe, such as minimum housing numbers and density. California's Brown Act, Government Code §§ 54950 et seq., requires such land use policy actions be done in open meeting, the petition alleges. The Brown Act's "litigation exemption" does not allow closed negotiations "used as a subterfuge to reach nonlitigation oriented policy decisions." *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 186.

After service of summons, the Tribe specially appeared and filed a motion to dismiss the action, arguing its sovereign immunity makes it an indispensable party. ECF 45. The Court ruled that the *Guidiville* stipulated settlement, invoking the Court's enforcement, was a clear waiver of the Tribe's sovereignty.

The Tribe thereupon appealed on June 24, 2019. ECF 60.

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES

### III. STATEMENT OF LAW

Federal Rule of Appellate Procedure 8(a)(1)(C) allows a party to move in the district court for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." While generally upon appeal the district court loses jurisdiction to take further action, Federal Rule of Civil Procedure 62(c) authorizes the district court to grant an injunction during pendency of appeal. The rule recognizes the long-established trial court right to preserve status quo while appeal is pending. *U.S. v. El-O-Pathic Pharmacy* (Ninth Cir. 1951) 192 F.2d 62; *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.* (Ninth Cir. 2001) 242 F.3d 1163, 1166.

The status quo is measured at the time the appeal is filed. *National Grange of the Order of Patrons of Husbandry v. California State Grange* (E.D. Cal. 2016) 182 F.Supp.3d 1065, 1072.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.* (2008) 555 U.S. 7, 20.

"Once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.* (Ninth Cir. 2007) 508 F.3d 1146, 1158.

Here, the Tribe has appealed the district court ruling that the Tribe waived sovereign immunity by entering into the stipulated judgment issued by that same court.

"Courts have generally found that claims of immunity are separate from the merits of the underlying action." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn* (Ninth Cir. 2007) 509 F.3d 1085, 1090.

The Tribe, therefore, in its appeal, must make a "strong showing" of its immunity. Thus, the Tribe's appeal here faces unlikely success, especially considering the clear waiver which the district court found in paragraph 47 of the *Guidiville* settlement, giving the district court enforcement of the settlement.

Under the Supreme Court's *Winter* standard, district courts must "give serious consideration to the balance of equities and the public interest." *Winter, supra*, at 368. *Earth Island Institute v. Carlton* (Ninth Cir. 2010) 626 F.3d 462, 475.

Irreparable harm to the public interest, City residents and the environment are present here.

1

# IV. ARGUMENTS

2      The Court's order that the City maintain the status quo during the Tribe's baseless appeal is vital to

3  the integrity of Brown Act enforcement. The procedural defenses of the City and the Tribe have already

4  been rejected by the Court. The Tribe's appeal here is patently without merit—its waiver of immunity is

5  the same stipulated judgment that the City claims exempts it from Brown Act compliance.

6      The balance of harm also argues for maintaining the status quo. Administrative decisions by the

7  City, such as development agreements, will create questions of vesting. Waste of significant public

8  funds will also result from money thrown at consultants and legal expenses in the City's pursuit of its

9  Point Molate development scheme.

10     If, during pendency of the appeal, the City proceeds with physical development of Point Molate,

11 environmental impacts are certain, as recognized by the City in preliminary environmental analysis.

12 Good faith environmental impact analysis is also jeopardized should the City further commit to its land

13 use plans.

14     Finally, and foremost, the public interest in enforcing government transparency deserves special

15 protection during appeal. Government accountability to its citizens is a foundation of democracy. The

16 clear lack of merit in the Tribe's appeal furthers the irreparable harm to the California public by the

17 City's subterfuge of government transparency.

18 **1. A strong showing has been made of the City's Brown Act violation.**

19     Showing of the City's Brown Act violation has already been tested in the City's motion to dismiss.

20 The City moved to dismiss on grounds of the insufficiency of the claims, ripeness, standing and on its

21 argument that Brown Act violation cannot void "contractual obligations." (ECF 12-1). With the Court

22 poised to deny those defenses, the City withdrew its motion.

23     Briefing on the merits by the City and petitioners has been filed with the administrative record.

24 (ECF 36, 37, 38 43). That record supports the petition's allegations. The City locked in Point Molate's

25 future land use without public participation. The City's own resolution had previously directed staff to

26 "…further review the Land Use Designations (LUD's) for Point Molate in the General Plan and that this

27 should be done in conjunction with public input and an open process through the Planning Commission

28 and City Council." AR 5017 (staff report November 21, 2016); AR 4003-4004.

**2. The City's furtherance of its Point Molate development scheme irreparably harms the public's right to correct past Brown Act violations and prevent further ones.**

The Brown Act's right of action is intended to correct and forestall opaque local government actions. This purpose is expressed in the statutory language:

California Gov. Code §54960(a): "The district attorney or any interested person may commence an action by mandamus, injunction, or declaratory relief <u>for the purpose of stopping or preventing violations or threatened violations of this chapter</u> by members of the legislative body of a local agency or to determine the applicability of this chapter to <u>ongoing actions or threatened future actions</u> of the legislative body, or to determine the applicability of this chapter to <u>past actions</u> of the legislative body, subject to Section 54960.2, or to determine whether any rule or action by the legislative body to penalize or otherwise discourage the expression of one or more of its members is valid or invalid under the laws of this state or of the United States, or to compel the legislative body to audio record its closed sessions as hereinafter provided." Emphasis added.

Generally, a statutory violation or potential violation is presumed to be irreparable harm.

"Because irreparable injury must be presumed in a statutory enforcement action, the district court needed only to find some chance of probable success on the merits." *U.S. v. Odessa Union Warehouse Co-op* (Ninth Cir. 1987) 833 F.2d 172, 176.

"The public interest is an important consideration in the exercise of equitable discretion in the enforcement of statutes." *Id.* See *Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 U.S. 531, 542 ("…particular regard should be given to the public interest…").

Other, more tangible, public harms will occur during the appeal's pendency if the City's administrative process is not enjoined. The City is poised to enter into a development agreement with a chosen developer, spending great sums of public funds to further that development scheme. Any physical development risks environmental impacts to Point Molate's site and shoreline. Analysis of those environmental impacts under the California Environmental Quality Act (CEQA) will be compromised by the City's heavy investment in its pre-determined project. Finally, if the City proceeds with its backroom Point Molate housing plan, Richmond's residents will shoulder millions of dollars, as detailed in an economist's recent study.

*a. Any development right vesting will harm all parties if the Court finds Brown Act violation.*

The City has exhibited every indication that it will proceed with its administrative implementation of the *Guidiville* settlement. It has selected a developer. It is negotiating a development agreement with the developer under an Exclusive Right to Negotiate (ERN) with SunCal to develop the Point Molate property. Declaration of Kelly T. Smith, paragraphs 2, 4, 6, 7; Ex. A, March 19, 2019 council minutes, Exhibit B, April 23, 2019 council minutes, Exhibit D, resolution entering ERN.

If the City is not enjoined it will enter into development agreement with SunCal. While the SunCal ERN was entered after the filing of the instant matter, and the City cannot therefore claim detrimental reliance, continued investment with SunCal or by SunCal may be mistakenly raised later as a claim of entitlement or vesting of development rights.

Should the Court ultimately decide that the City's *Guidiville* settlement was invalid under the Brown Act, the City, its developers, the Tribe and possibly others will argue the hardships and legal inviolability of any prior administrative action.

*b. City consultant, attorney and expert expenditures cannot be recouped.*

While it negotiates with its chosen developer, the City is expending hundreds of thousands of public dollars in Point Molate development plans. It has committed $300,000 in legal fees to negotiate with SunCal to reach the disposition and development agreement (DDA) for Point Molate. Ex. B, item H-2, council minutes, Declaration of Smith, paragraph 3. A further $240,000 set for approval June 4, 2019 was delayed. Ex. C, City council minutes, item H-5, Declaration of Smith, paragraph 5.

If the Court were to order an open public process under the Brown Act, the political outcome of an open process could greatly change the plans—and costs—of Point Molate development. This would mean that public money thrown at the *Guidiville* settlement will be irreparably wasted.

Petitioners SPRAWLDEF and Citizens for East Shore Parks commissioned a comparison of the City's *Guidiville* housing development with a visitor-based alternative. Ex. 1, Declaration of Robert Cheasty, the Hatch Urban Solutions study. It shows that the *Guidiville* high-end housing project would cost Richmond's residents millions of dollars more each year to provide police, fire and emergency services.

The City's ongoing *Guidiville* development and investment should be enjoined.

1  *c. City expenditures will interfere with good faith environmental impact analysis.*

2      Any City administrative approvals of the *Guidiville* project will have environmental consequences.

3  The City's own Notice of Preparation of a Subsequent Environmental Impact Report states that irrepar-

4  able, significant environmental damage will result from the project. Exhibit E, page 10, section K,

5  Declaration of Smith, paragraphs 8-12.

6      The expenses which the City continues to sink in the project, including the consultant and attorney

7  costs cited above, will jeopardize a good faith environmental impact analysis under the California

8  Environmental Quality Act (CEQA).

9      CEQA is intended to evaluate environmental impacts <u>before</u> the impacts occur—to look before

10 leaping. Here that principle is jeopardized by the City's commitment in the *Guidiville* settlement, its

11 ERN with SunCal, and its expenses already thrown at the Point Molate land use plans under the

12 *Guidiville* settlement.

13     If allowed to proceed with CEQA review of the *Guidiville* settlement while appeal is taken, the

14 City's risks a *post hoc* rationalization of the project's environmental consequences.

15     In *Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, the state's high court addressed the

16 "CEQA compliance condition," such as the City here invokes in the *Guidiville* settlement and its

17 implementing commitments. *Save Tara v. City of West Hollywood, supra*, at 133.

18     *Save Tara*'s facts revolved around a "conditional agreement" to convey the property.  West Holly-

19 wood adopted the conveyance subject to, among a limited number of other conditions, any actions

20 necessary "to comply with CEQA." *Save Tara v. City of West Hollywood, supra*, at 124.

21     In rejecting law indicating that anything short of irrevocable, vesting contract commitment does not

22 rise to project commitment, *Save Tara* emphasized that commitment occurs "when the agency first

23 exercises its discretion to execute a contract or grant financial assistance, not when the last such discre-

24 tionary decision is made." *Save Tara v. City of West Hollywood, supra*, at 134, emphasis in original.

25     Moving forward with a project can create an irresistible "bureaucratic and financial momentum" in

26 favor of a project. *Save Tara v. City of West Hollywood, supra*, at 135. It would undermine the CEQA

27 environmental analysis which, like the Brown Act, is intended to provide the public with a transparent

28 evaluation of a project's environmental impacts.

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES

**3. The Court, under the *Guidiville* stipulated judgment, can toll its implementation.**

In denying the Tribe's motion to dismiss, the district court held that the Tribe waived any sovereign immunity by entering the *Guidiville* judgment's stipulation to the Court's continuing jurisdiction over the settlement terms. The pertinent stipulation section 47 also obtains the Court's supervision over its terms, and how they are enforced, which would include suspension or modification of the stipulation.

The Tribe's appeal removes the district court's jurisdiction over the question of its sovereign immunity and the underlying merits of the Brown Act allegations. However, either the *Guidiville* settlement agreement is also suspended during the appeal or its terms must be recognized. And, as the Court found, the *Guidiville* settlement provides for the Court's ongoing jurisdiction over its enforcement.

Therefore, if necessary, the district court should stay any time imperatives of the *Guidiville* stipulated settlement.

**4. The City's long-delayed development scheme will not be irreparably harmed.**

The City may claim that it proceeds with its Point Molate development entitlements under the mandates of the *Guidiville* settlement and Government Code §54960.1(d)(3), preserving contract obligations. But Gov. Code §54960.1(d)(3) does not preserve obligations entered once there is notice of Brown Act challenge.

The obstacles to Point Molate's development are well documented. This was especially so regarding the extensive contamination left from decades of military and industrial use. AR 079-082. The instant action does nothing to change the time required for the City and any developer to address those conditions, or the vicissitudes of the marketplace and economics.

Petitioners have exerted every effort to resolve their petition without delay. The Court's orders to date have set this case for expeditious resolution. The City rushed to provide the administrative record, so that petitioners could quickly file opening briefs. The City has filed its opposition and petitioners have replied.

The question now before the Court is whether the City should be allowed to proceed with its administrative process and ignore the open government process. Only the public is harmed by the City's scofflaw attitude toward open government.

**5. The public interest in open government is paramount.**

The public interest is a separate standard for granting injunctive relief. *Protect Our Water v. Flowers* (E.D. Cal. 2004) 377 F.Supp.2d 882, 884, citing *Amoco Production Co. v. Village of Gambell, supra,* at 545.

The public interest in government transparency is a vital right in California. California citizens have enshrined the right to open public meetings in their constitution. In 2004, they approved Proposition 59, the "Sunshine Amendment," enacting Cal. Const., Art. I, §3(b), to guarantee public access to government meetings.

This constitutional right is implemented through the Ralph M. Brown Act, California Government Code §§ 54950 et seq. The "Brown Act" requires that "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend," except as otherwise provided by the Act. Gov. Code §54953.

Here, the defendants have used litigation settlement as a subterfuge to the public interest in government openness. Indeed, the City has frequently justified the *Guidiville* settlement not as a stipulation between the parties in secret meeting, but rather as a court-ordered judgment by which it must comply.

Without having to face an open vote, the City's politicians can say whatever they want about why they struck the deal they did. This is another *post hoc* rationalization. It is another means of shunting public accountability and cutting deals with developers without accountability. It undermines the public's votes and democracy itself.

"The Brown Act is intended to ensure the public's right to attend public agency meetings to facilitate public participation in all phases of local government decisionmaking, and to curb misuse of the democratic process by secret legislation of public bodies." *Chaffee v. San Francisco Library Com.* (2004) 115 Cal.App.4th 461, 469.

In particular, the interest of petitioners and the public in open government would be harmed if the City evades Brown Act compliance. Richmond's citizens have long engaged in the public process of determining Point Molate's future. The backroom Guidiville deal frustrates that public engagement.

To assure the public's interest in open democracy, the Court should preserve the status quo until the question of the City's Brown Act compliance is settled.

13

1

## V. CONCLUSION

In order to preserve the status quo during the pendency of appeal, the Court is respectfully requested to enjoin the City of Richmond from taking any action in furtherance of the *Guidiville* settlement, including any administrative approvals, financial expenditures or commitments, contracts or agreements, as specified in petitioners' proposed order.

DATE: July 30, 2019

KELLY T. SMITH
STUART M. FLASHMAN
Attorneys for Petitioners
SPRAWLDEF et al

_____
KELLY T. SMITH

PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION; POINTS & AUTHORITIES